## Cummings *versus* Pittsburgh, Cincinnati and St. Louis Railway Company.

1. A lad who was employed by a coal dealer was engaged in unloading cars standing upon a siding constructed by the dealer upon his own land. By reason of the neglect of the railroad employees to change the switch leading to the siding from the main track, several cars were propelled from the main track upon the siding and colliding with the cars on which the lad was employed, he received injuries from which he lost his leg. In a suit against the railroad company for damages. *Held*, that the lad was employed on or about the company's road within the very terms of the Act of April 4th 1868, and could not recover.

2. Mulherrin *v.* Delaware, Lackawanna and Western Railroad Co., 31 P. F. Smith, followed.

[Cummings v. Pitts., Cin. & St. L. Railway Co.]

November 7th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ.  STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county:* Of October and November Term 1879, No. 328.

Case by Daniel Cummings, by his father, John Cummings, against the Pittsburgh, Cincinnati & St. Louis Railway Company, to recover damages for an injury to said Daniel Cummings, whereby he lost his leg.

The lad, who was about fourteen years of age, was caught and crushed between two coal cars in the coal yard of Morris McCue. At this same point there are several coal yards which are supplied with coal brought in cars on the defendant railway.

The ground on that side of the railroad at this point is about eight to ten feet lower than the railroad.  The coal cars are run into the coal yards upon switches and short tracks running out into the coal yards upon frame trestle-work, and the coal is unloaded by drops, in the bottom of the cars, which are unfastened and the coal dropped down through the trestle-work into the coal yard.  There are between the points named two main tracks of the railroad; then alongside and east of these main tracts there is a side track, which side track is located, partly on the ground of the railroad and partly on the ground of the owners of the coal yard.  This side track was put in by the railroad, but a part of the cost of the same was assessed upon the owner of each coal yard connected with it.

From this side track there are switches and tracks running into each coal yard.  These short tracks are upon the private property of the owners of the coal yards, and were constructed by themselves upon the trestle-work, as above stated.  The owner of one of these coal yards is Morris McCue.  He owns mines on the line of the railroad.  His coal is loaded into cars of his own at the mines and then brought in by the defendant railroad company, on its road, by its locomotives and employees, to his coal yard in the city.  When the train with the coal cars arrives it is changed, by a switch, from the main track to the side track, above mentioned; then it passes along the siding until near McCue's siding, when that switch is also turned and the cars are run from the coal siding on McCue's private track.  The locomotive does not follow on this private track into the coal yard, but at this point it gives the cars a *shove* or a *shot* and drives them back on the coal switch by means of the force thus applied by means of the locomotive.

Located adjoining and east of McCue's coal yard is the coal yard of the National Coal Company.

On the 4th day of June 1878, a locomotive in charge of the employees of defendant company, with a train of about twelve coal cars, came into the city over the railroad.  Of the cars in this train six belonged to McCue and the balance to the National Coal

Company, and were to be delivered upon the sidings or tracks in these two coal yards.

The twelve coal cars were in front and pushed by the locomotive in the rear. The train switched off upon the side track, ran opposite to McCue's yard, uncoupled the six cars of McCue, gave them a shove and sent them back upon McCue's siding, in his coal yard, and then ran back towards Second avenue until clear of McCue's siding, and stopped; then came ahead fast, intending to pass McCue's coal yard and shove or shoot the other six cars upon the siding of the National Coal Company. When the locomotive and train drew back from McCue's siding it was the duty of those in charge of the train to *change* the switch at McCue's so as to direct and send the train, on its return, past McCue's siding and upon the siding of the National Coal Company.

But this was neglected: the switch was not turned; and when the coal train returned it ran back again upon McCue's switch and collided with the cars there previously left, and broke and wrecked several of said cars and threw them down on the trestle-work.

The business of this boy, the plaintiff, was to mount the cars, after the drops in the bottom were opened, and push the coal in them to the opening in the centre. He and his employer, McCue, had just mounted the next to the rear car for this purpose, when the collision took place. McCue sprang down upon the coal below, but the boy was caught between the fragments or parts of the car, and fell, with the *debris*, down upon the coal below; his leg was crushed and was amputated shortly after. This action was brought for the injury thus sustained, and the cause of action against the defendant was the alleged carelessness and negligence of the defendant's employees in again running their train back into McCue's coal yard with great force and violence, and with neglecting to *turn* the switch and thus guide and direct the train to its proper destination on the tracks of the National Coal Company.

The plaintiff having proved the above facts the defendant moved for a nonsuit for the following reasons:

" That taking all the evidence to be true as testified to on behalf of plaintiff's witnesses it discloses nothing more than a case of an employee injured in and about the work of a railroad company. The evidence shows that at the time Daniel Cummings was injured he was in the service of the coal company. And by a contract and arrangement between McCue and the railroad company by which coal was to be delivered in the coal yard over sidings, which was upon the ground of McCue and others, connecting with the main track of the company. And under this contract or arrangement which was used in common as a place for the delivery of coal, was a coal depot connecting with the railroad, and as such under the Act of 1868, parties connected in and about the depots and tracks

[Cummings v. Pitts., Cin. & St. L. Railway Co.]

of the railroad company in a business of this kind cannot recover against the common employer."

The court sustained the motion for the nonsuit. A motion was subsequently made in the court in banc to take said nonsuit off, which was refused. The plaintiff then took this writ and assigned this action for error.

*Barton & Sons*, for plaintiffs in error.—In the court below the defendant relied on Kirby *v.* Railroad, 26 P. F. Smith 506. A very superficial examination of that case shows that it does not rule this one. Kirby, when injured, was on the cars of the railroad on the side track of the railroad, actually on the company's ground. The coal railroad did not connect, but ran alongside above grade, and the coal was run down chutes from the cars of the coal company into the cars of the railroad. Kirby was loading coal into the railroad company's cars. Cummings, the plaintiff, was on the cars of McCue. The cars were on the siding of McCue, and the siding was on his property at a time when all connection was or should have been cut off. The cars of the defendant and its employees had no authority to be there then more than merely to go past, and by their own negligence in not turning their switch, ran off their course, and into the private property of another.

The Act of 1868 is a sufficient innovation upon the rights of the people without extending it any further than the words will bear. It is confined to those injured while employed in or about depots, or in or upon any car or train *therein* or *thereon*. That is upon a car or train of the railroad company on its railroad or in its depot. The boy was not employed in or about a railroad depot. He was simply unloading coal in the coal yard of a private citizen from a car that had passed all the perils of railroad and depots.

*Hampton & Dalzell*, for defendant in error.—Counsel for plaintiff seek to distinguish Kirby's case from this, by saying that there the cars were the railroad company's, and the siding on the company's ground, while in this the cars were McCue's, and the switch on his ground. To maintain such distinction is to fritter away the statute. If the party is injured while lawfully employed about a railroad company's road or works, it matters not on whose car he may be, or whether on any car, he is within the express letter of the statute. That construction which makes the defendant's liability depend upon a difference of a few feet in distance, is wholly inconsistent with the plain intent of the statute, which was to put all persons subject to risk from railway operation on the same footing, whether they were in the actual employ of the company causing the injury or not. Hence the language used: " On or *about* the roads, works, depots and premises."

But so far as the plaintiff's rights are concerned, he may be said

[Cummings *v.* Pitts., Cin. & St. L. Railway Co.]

to have been *on* the defendant's road or premises. The company not only had a right, but it was its duty, to run cars over the McCue switch and into his yard. It was its switch for the purpose of moving trains over it to deliver coal.

The argument of plaintiff is not new. It is the same that was made and disposed of in Mulherrin *v.* Del., L. & W. Railroad Co., 31 P. F. Smith 376.

The judgment of the Supreme Court was entered November 17th 1879,

PER CURIAM.—This case is not distinguishable from Mulherrin *v.* Delaware, Lackawanna and Western Railroad Co., 31 P. F. Smith 366. The side track here, though upon the property of the plaintiff's employee, was nevertheless used by the defendant and by his license. The plaintiff below was therefore employed on or about the defendant's road, and within the very terms of the Act of 1868. ·

Judgment affirmed.