## WILSON CHRISTMAN v. PHILA. ETC. R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF LEBANON COUNTY.

Argued February 19, 1891—Decided April 20, 1891.
[To be reported.]

(a) An employee of an iron company was engaged in carrying to its mill a lot of bar-iron, unloaded the day before from a railroad car, and piled up between the two tracks of a private siding on the iron company's ground. The siding was connected with two railroads, by each of which freight was shipped to and from the mill:

1. In an action by the employee against one of the railroad companies, for personal injuries caused by negligence in shifting its cars, and received by the plaintiff while so carrying the iron, the question whether the siding was the "premises" of the defendant, within the meaning of § 1, act of April 4, 1868, P. L. 58, was immaterial.

2. For, as the plaintiff was not employed in any business connected with the railroad, and his work had no connection with the prior unloading of the iron, he was not within the provisions of said act: Richter v. Penna. Co., 104 Pa. 511, followed; Cummings v. Railway Co., 92 Pa. 83; Balt. etc. R. Co. v. Colvin, 118 Pa. 230; Stone v. Railroad Co., 132 Pa. 206, distinguished.

Under the circumstances of this case, the court could not declare the plaintiff guilty of contributory negligence, as a matter of law: how long he might prudently continue at work, after seeing the shifting engine pass, and what degree of observation was incumbent upon him, depended upon too many elements to enable the court to apply a fixed standard of duty.

Before Paxson, C. J., Sterrett, Williams, McCollum and Mitchell, JJ.

No. 187 January Term 1891, Sup. Ct.; court below, No. 92 December Term 1889, C. P.

On October 29, 1889, Wilson Christman brought trespass against the Philadelphia & Reading Railroad Company, for negligence causing personal injuries to the plaintiff. The defendant's plea was not guilty.

At the trial, on May 22, 1890, the following facts were shown:

For many years prior to the plaintiff's injury, the Lebanon Rolling Mills, and its predecessors, S. E. Light & Co., had owned and operated a rolling-mill in the city of Lebanon. Upon the grounds annexed to the mill its proprietors had constructed a private railroad siding, consisting of two nearly parallel tracks, connected with the railroad of the defendant company, and also with that of the Cornwall & Lebanon Railroad Company. The siding was intended and used for the standing thereon of freight cars brought to the mill by either of the railroad companies, during the loading or unloading of them. When it was not occupied for that purpose, the railroad companies were in the habit, as suited their convenience, of standing other cars on the siding, and such use of it was authorized by the proprietors of the mill. One or both the companies sent shifting engines upon the siding daily, to bring in and take away cars. The testimony tended to show that it was customary, before making a shift, to send one of the train crew, to give notice to the men employed about the mill of the intention so to do.

On January 15, 1889, the plaintiff was employed as a laborer at the mill, assisting to carry into it a lot of bar-iron, which had been unloaded by some one else from a car the day before, and was piled up on the siding between the two tracks. He had worked at the mill in different capacities for five or six months, had been engaged about the siding most of the time, and was familiar with the manner in which shifts were made upon the siding by the railroad employees. It was necessary to carry the iron across the track of the siding next to the mill. Upon that track, and between the pile of iron and the mill, were standing two cars known as "coal dumps," belonging to the

Statement of Facts.

Pennsylvania Railroad Company, brought upon the siding by the Cornwall & Lebanon Railroad Company. The cars were cut apart, and the laborers who were carrying the iron passed between them in crossing the track. They were so near together, however, as to make the passage between them difficult; and for the purpose of getting more room to pass, the plaintiff removed the coupling link from the drawhead of one of those cars, and laid it on the bumper.

After the plaintiff had been at work for some time, a shifting engine of the defendant company came upon the siding, for the purpose of moving some empty cars belonging to that company standing to the west of the two coal cars. The plaintiff testified that he saw the shifter go up on the defendant's track, but did not know whether it was coming upon that siding or not, as it often went up in that direction without doing so; that he continued at work for about fifteen minutes, when it came into his mind that he would replace the link in the drawhead of the coal car, as he thought the railroad employees might come in on the siding and want to shift the coal cars; that, while he was on the way across the track to get another piece of iron, he stopped to put the link in, and immediately after, just as he started on, the cars were pushed together, suddenly and without warning, and his arm was crushed between them. There was testimony for the plaintiff tending to show that the cars of the defendant upon the siding, after some shifting backward and forward in connection with coupling the cars together and making up the train to be taken out, were driven by the defendant's employees at a considerable speed against the coal cars, without the sounding of a whistle to indicate an intention of doing this, and without having a brakeman at the rear of the string of cars which the shifter was moving. Testimony for the defendant tended to prove that the whistle was sounded before each movement of the engine. The conductor in charge of the shifting operations testified that he did not want to take out the coal cars, and that was the reason he did not have a brakeman back at the rear. The plaintiff testified that he had not seen any employee of the defendant company about, at the time he started to put the link in the drawhead, and he did not see the shifting engine anywhere at that time. On cross-examination he was asked:

Charge of Court below.

" Q. Did you look, when you went across there, to see whether there was an engine attached to those cars? A. I didn't see that. Lights would not pay me to see the shifter; they paid me to earn my little dollar there; they didn't pay me to watch the shifter. Q. Would you have seen it. A. I would not see it."

At the close of the testimony, the court, SIMONTON, P. J., charged the jury in part as follows:

The defendant has asked us to instruct you as follows:

1. If the jury find that Christman was hurt while stopping upon the siding, and in consequence of his voluntarily attempting to couple the cars, or to replace the link and pin in the drawhead of the car standing there, then their verdict must be for the defendant.

Answer: This is refused.[1]

5. That, as the uncontradicted evidence shows that the plaintiff before and at the time of the injury was lawfully employed on and about the siding and premises of the defendant, his right of action and recovery is therefore such only as would exist if he were an employee of defendant, as provided by the act of assembly, approved April 4, 1868, and therefore he cannot recover.

Answer: This is refused.[2]

6. That, as the evidence shows that the plaintiff at the time of the injury was voluntarily engaged on or about a railroad car on siding, and on and about the siding and premises of the defendant, his right of action and recovery is therefore such only as would exist if he were an employee of the defendant, as provided by the act of assembly approved April 4, 1868; and, as the negligence complained of is the alleged negligence of brakemen and employees in charge of defendant's engine and cars, who occupy the relation of fellow-servants to the plaintiff, therefore he cannot recover.

Answer: This is refused.[3]

7. The statement of the plaintiff, that he saw the shifting engine of the defendant pass the rolling mill about fifteen minutes before the accident, in connection with his admission that it came into his mind that the engine might shift, together with his knowledge of the siding and its use, establish his

Charge of Court below.

knowledge of the danger at the point where the accident occurred equivalent to notice to him, and taint his subsequent conduct with negligence contributing to the injury, and therefore he cannot recover.

Answer: This is refused.[4]

8. That, as it appears from plaintiff's own statement that he was employed on and about the siding where the accident occurred, in unloading coal and iron from railroad cars and in carrying such freight into the rolling mill, for a period of from five to six months preceding the injury, and had knowledge of the daily shifting of cars upon said siding, caution proportionate to the danger became a duty on his part; and, as it appears, further, that just before the accident he hurried upon the siding, without stopping to look or listen, or without other precaution, but voluntarily stopped between the cars to replace the link and pin in the drawhead of the car standing there, and was hurt immediately thereafter, therefore he cannot recover.

Answer: This is refused.[5]

9. That, as it appears from the plaintiff's statement that he was hurt while stopping upon the siding, between the cars standing there, in order to place the link and pin in the drawhead of one of the cars, and that his act in so doing was gratuitous and voluntary, and as it appears from the evidence that he was hurt while so doing, or immediately thereafter, therefore he cannot recover.

Answer: This is refused.[6]

10. That, under all the evidence in the case, the verdict must be for the defendant.

Answer: This is also refused.[7] . . . . .

The plaintiff, then, cannot recover unless he show negligence on the part of the defendant, and unless he show, or until it appear from all the evidence in the case, that he himself was not negligent. Those two things must appear before the plaintiff can recover, and they are the two important questions in the case, in addition to the third question, which we will present to you now; and that is, whether there is anything in the act of assembly of April 4, 1868, which under the facts in this case would prevent the plaintiff from recovering. . . . . [And we say just this to you about that, gentlemen, that if when he was

Charge of Court below.

injured, and immediately before he was injured, he was engaged on or about the roads, works, depots and premises of the railroad company, or in or about any train or car of the railroad company, then he cannot recover.  It is not a question of the ownership of the property necessarily.  It might be the premises of the railroad company, even if they did not absolutely own it.  The question is, Was this the premises of the railroad company, or was it the premises of the Light rolling-mill?  Or, it might be both.  Two railroad companies might have a right over the track, so that it would be the premises of either in case an accident happened, so far as this act of assembly would apply; and you must determine from the evidence in this case as to whether this was the premises of the railroad company.  If it was, and if he was employed about the premises of the railroad company, then he cannot recover in this action, because this act of assembly stands unrepealed.  If it was its premises, he cannot recover so far as this act is concerned.  If you find that this was the railroad's premises, it is the end of the case.] [8]

If you do not so find, then you have to go on with the other questions.  The first question is, Was the railroad company negligent,—were the persons who were in the service of the railroad company at the time—the men who shifted the train— were they negligent?  Now, we have told you what negligence means; so you will understand what we mean when we say, Were they negligent?  Did they act as persons who were prudent and careful would act under the circumstances, when they came in there,—when they backed in,—when they did the thing which caused the accident?  That is for you to determine, gentlemen, from the evidence. . . . .

If they were negligent, then you have to determine the further question whether the plaintiff was negligent or not; and you apply the same principle there.  Did he act as a prudent, careful person would act or ought to act under the circumstances?  He had a right to be there; he was not a trespasser upon that track, so far as the evidence shows; I do not think it is contended by any one that he was.  That is where his work was, where his employment was.  If it was a very dangerous place, he was bound to use a very great deal of care.  If it was a place where accidents were likely to happen by the shifter coming in, those who were managing the shifting were bound

to exercise a great deal of care.   Both sides were bound to use care according to the circumstances, and the greater the risk the greater the care that was called for; and that is merely saying that a prudent person would exercise more care, where the danger is great than where it is not.   You will therefore determine whether the plaintiff had proper means of knowing the danger, and whether he acted carefully and prudently or carelessly and recklessly.   If he was negligent he cannot recover; no matter whether the other party was negligent or not.   You cannot divide, or split up the responsibility, or do anything of that kind; if he was negligent, that is an end of the case.   And so you must determine these questions, and these are the only questions in the case, as to the liability. . . . .

—The jury returned a verdict for the plaintiff for $3,210. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1–7. The answers to the defendant's points.[1 to 7]

8. The portion of the charge embraced in [ ][8]

*Mr. C. H. Killinger* (with him *Mr. J. W. Killinger*), for the appellant:

The constitutionality of the act of April 4, 1868, P. L. 58, was affirmed in Kirby v. Railroad Co., 76 Pa. 507; Penna. R. Co. v. Price, 96 Pa. 256.

1. Upon the undisputed facts, it is clear that this siding was the "premises" of the defendant, within the meaning of said act; that the plaintiff was within its provisions, and the court should have so charged, this being a question of law for the court: Stone v. Railroad Co., 132 Pa. 206; Balt. etc. R. Co. v. Colvin, 118 Pa. 230; Cummings v. Railway Co., 92 Pa. 82. Richter v. Penna. Co., 104 Pa. 511, is distinguishable by reason of the fact that the work at which the plaintiff in that case was engaged,—hauling ashes across a siding,—had no connection with the railroad; whereas, the present plaintiff was handling freight brought upon the siding in the railroad cars and there unloaded.

2. Even if the act of 1868 does not apply, the plaintiff cannot recover, because, according to his own showing, he was guilty of contributory negligence.   He had knowledge of the danger on the siding, having worked on and about it for five

Arguments.

or six months. He had reason to apprehend danger at the time of the accident. His testimony indicates that he replaced the coupling link in expectation of a shifting of the cars soon to be made. Thinking as he did, he was negligent in acting as he did. It was his duty to look out, to make some attempt at inquiry before he went upon the track, and his stopping there to replace the link without any such inquiry, was negligence, barring his recovery in this action: Flower v. Railroad Co., 69 Pa. 210; Mulherrin v. Railroad Co., 81 Pa. 366; McDonald v. Iron & Coal Co., 135 Pa. 1.

*Mr. A. Frank Seltzer* (with him *Mr. B. Morris Strouse*), for the appellee:

1. Cases not within the letter of the act of April 4, 1868, should not be brought within it by equitable construction; on the contrary, the act should be construed strictly, and most strongly against the party setting it up: Vanhorne v. Dorrance, 2 Dall. 316; Brown v. Barry, 3 Dall. 367; McMullin v. McCreary, 54 Pa. 230; Borland v. Nichols, 12 Pa. 43; Stormfeltz v. Turnpike Co., 13 Pa. 555; 1 Kent. Com., 464; Potter's Dwarris, 185, 240, 247; Burnside v. Whitney, 21 N. Y. 148; Mills v. St. Clair Co., 8 How. 569; Perrine v. Canal Co., 9 How. 172; Kirby v. Railroad Co., 76 Pa. 507; Wales v. Stetson, 2 Mass. 146; Sickles v. Sharp, 13 Johns. 497; Wood v. Adams, 33 N. H. 36.

2. The word "premises" has a distinct and well-understood meaning. It means land, or building. To constitute this siding the premises of the defendant, it should be owned by, or at least in the possession and exclusive control of the defendant. Neither the siding nor the cars between which the plaintiff was crushed belonged to the defendant. Our case is identical with Richter v. Penna. Co., 104 Pa. 511. See also: North Penna. R. Co. v. Kirk, 90 Pa. 15, 21. The plaintiff's employment had nothing to do with the presence of the railroad or the cars. He was simply exercising his right to cross the track.

3. The act of 1868, however, is unconstitutional: (*a*) Because it was an attempt by the legislature to exercise a power not legislative but judicial: Edwards' App., 108 Pa. 283; Splane's Petition, 123 Pa. 527; Titusville I. Works v. Oil Co., 122 Pa. 627; O'Conner v. Warner, 4 W. & S. 223; Norman v. Heist,

5 W. & S. 171. (b) Because the right to recover damages for injuries not resulting in death existed at common law, and is therefore one of the indefeasible rights guaranteed to all citizens by the Bill of Rights, which requires the application of the act to be restricted to the statutory remedy for injuries causing death : Central Railway v. Cook, 1 W. N. 319 ; Thirteenth St. Ry. Co. v. Boudrou, 92 Pa. 475 ; Penna. R. Co. v. Price, 96 Pa. 257 ; Wydham v. People, 13 N. Y. 390.

4. The defendant's point as to contributory negligence was disposed of by the jury under proper instructions. In McDonald v. Iron & Coal Co., 135 Pa. 1, cited by appellant, there was an ever-present known danger to which the plaintiff voluntarily exposed himself. Here, there was no danger at all, present or prospective, except when the engines of the railroad companies would bring it there. The fact that the plaintiff saw the shifter on the defendant's track has no significance, as it was constantly running on that track, delivering freight to other establishments. The proximate cause of the injury was defendant's negligence in not giving warning : Thirteenth St. Ry. Co. v. Boudrou, 92 Pa. 475.

OPINION, MR. JUSTICE MITCHELL :

The assignments of error raise two questions :

1. Was the plaintiff on the footing of an employee of the railroad company, under the act of 1868 ? That act includes persons " lawfully engaged or employed on or about the roads, works, depots, and premises of a railroad company, or in or about any train or car therein or thereon." Whether the place of the accident was the premises of the railroad company was left to the jury as a question of fact. The land on which the siding was laid, and the tracks themselves, were not the property of the defendant, but of the rolling-mill, and were used from time to time as required by the convenience of the mill, by defendant, and also by the Cornwall & Lebanon Railroad Company, under conditions which were in evidence by parol. It is not clear that the place was the premises of the railroad company, within the meaning of the statute ; and certainly, in the absence of a specific request to charge to that effect, it was not error to leave the question to the jury. But, in either view, this point was unimportant, for the plaintiff was not employed

Opinion of the Court.

or engaged in any business connected with the railroad.    There
was a pile of iron on the ground of the rolling-mill, and plaint-
iff was engaged in carrying it into the mill.    The iron had in
fact been unloaded from the cars the day before, but the act of
unloading had been fully completed, and had no connection
with plaintiff's work.    So far as that was concerned, there was
no difference whether the unloading was the day before or the
year before.    So, also, the fact that when unloaded it had been
piled up between the two tracks had nothing to do with plaint-
iff's work, except that it involved the incident, immaterial so
far as the nature of his work was concerned, that he had to
cross one of the tracks in going to and fro between the pile
and the mill.    If the iron had been piled between the track and
the mill, his employment would have been exactly the same,
and yet he would not have had anything to do with the track.
As said in Richter v. Pennsylvania Co., 104 Pa. 511, plaintiff's
" business was not with or about the railroad, or its cars, but
about the iron-works, . . . . and he became neither an em-
ployee nor quasi employee of the defendant, simply because he
attempted to remove one of its cars from his path."    That case,
in fact, is so closely on all fours with the present that it is
unnecessary to do more than refer to it generally for the prin-
ciples by which this is to be ruled.

The distinctions between this and the other cases cited are
obvious.    In Cummings v. Railway Co., 92 Pa. 82, the plaintiff
was on the car assisting in unloading.    In Balt. etc. R. Co. v.
Colvin, 118 Pa. 230, the plaintiff was hauling freight to the
cars, and was in a place which this court said was " practically
a part of the yard."    And in Stone v. Railroad Co., 132 Pa.
206, plaintiff was separating the train, which was primarily the
work of the  railroad employees, but which the evidence estab-
lished was his duty, in case the others omitted it.    It was rail-
road business, and while he was engaged at it he was put by the
statute in the position of a quasi employee.

2. Was the plaintiff so clearly guilty of contributory negli-
gence that the court was bound to say so, as a matter of law ?
Plaintiff was there in the prosecution of his work.    The iron
was between the tracks, and he necessarily had to cross one of
them to get to the mill.    The iron bars were from twelve to
twenty feet long  and to facilitate his work he widened the

Opinion of the Court.

passage between the cars by taking out the coupling. While engaged at his work he saw the shifting engine go up on the defendant's road, and, after continuing his work for about fifteen minutes, the thought occurring to him that the cars on the switch which he was crossing might be shifted, he replaced the coupling, and as he started across the track for another bar of iron the cars were jammed together and the injury happened. Much stress was laid by appellant on the fact that plaintiff had been employed on or about the switch for several months, and had knowledge of the danger during the operation of shifting. This fact was sought to be used to show that he was within the act of 1868, but had no bearing on the nature of his actual employment at the time of the injury. It was, however, relevant as showing knowledge which bore upon the question of negligence. But this knowledge had a double edge. While conveying notice of danger, it also conveyed notice of the time likely to elapse and the warning customarily given, before the danger became imminent. It was in evidence that, after the plaintiff saw the engine go up, fifteen or twenty minutes were occupied in coupling the cars to be taken out and getting the train together. It is also in evidence that the two cars between which the injury occurred were not defendant's cars, and were not to be taken out. Under these circumstances, it certainly was not plaintiff's duty, immediately on seeing the engine go up, to cease work and stand idle for the fifteen or twenty minutes required in the operation of shifting. How long he might prudently continue at work, and what amount of observation he was bound to give to the progress of coupling the cars and approaching his locality, depended on too many elements to enable the court to say there was any fixed standard of prudent conduct to which he was bound to conform. That, under the circumstances in evidence, was a question for the jury.

None of the assignments of error can be sustained.

Judgment affirmed.