# Vannatta, Appellant, *v.* Central Railroad of New Jersey.

## [Marked to be reported.]

*Railroads—Connecting carriers.*

The liability of a connecting carrier does not begin, and the duty of the first carrier is not completed, until there has been an actual delivery to the connecting carrier.

*Negligence—Railroads—Connecting lines—Fellow servants—Act of 1868.*

Where no delivery of goods is intended at the point where two railroads connect with each other, but the delivery takes place in the yards of the connecting company beyond the point where the roads meet, the operation of trains by the first company in the yards of the second company is not in performance of a duty which the second company is required to do, and employees of the two companies are not fellow servants within the meaning of the act of April 4, 1868.

The Lehigh Valley Railroad Company and the Central Railroad Company of New Jersey connect at Easton. The Lehigh Valley Railroad Company has a yard with sidings on its own line at South Easton. Cars for the Lehigh Valley Railroad are not delivered by the Central Railroad at the point where the roads connect, but beyond this point in the yards of the Lehigh Valley Railroad at South Easton. Plaintiff's husband was employed by the Lehigh Valley Railroad as an inspector of cars in this yard. The Central Railroad Company moved a train into this yard, and the yard master designated by signals the siding to which the train was to be sent.

The train was put into rapid motion and while thus moving the locomotive was cut loose from it, and the train by its own momentum ran into the designated siding. The conductor delivered his waybills for it to the yard master of the Lehigh Valley Railroad Company, and then with his crew mounted the locomotive and left the train upon the siding. Upon the arrival of the train plaintiff's husband began to inspect its cars, and while so engaged under a car, the Central Railroad Company's employees, finding that the train had not entirely cleared the siding, returned with their locomotive and pushed it forward. Plaintiff's husband was unable to crawl out and was killed. *Held*, (1) that the Central Railroad Company, while hauling the train in question from the connection of the two roads to the siding in the yard was not an employee of the Lehigh Valley Railroad Company, and (2) that the act of April 4, 1868, did not apply to plaintiff's husband in this case.

*Contributory negligence—Disputed facts.*

Where there is a reasonable doubt as to the facts or the inferences from them, the question of contributory negligence is a question for the jury.

Argued March 9, 1893. Appeal, No. 316, Jan. T., 1893, by plaintiff, Sarah Vannatta, from judgment of C. P. Northampton Co., Feb. T., 1892, No. 39, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Trespass for death of plaintiff's husband.

The facts appear by the opinion of the Supreme Court, and by the charge of the court below.

The charge of the court was as follows by REEDER, J.:

" The facts in this case, as disclosed by the plaintiff's own testimony, are that the Central Railroad of New Jersey and the Lehigh Valley Railroad are railroads which at their termini unite. It appears also that shipments of freight are made from different points on the line of the Central Railroad of New Jersey to points along the Lehigh Valley Railroad, and that it is necessary, therefore, in the carrying of this freight that the cars upon which it is placed should be run from the tracks of the Central Railroad of New Jersey on to the tracks of the Lehigh Valley Railroad; and the converse of that position is also true—that shipments made from points along the Lehigh Valley Railroad to points along the Central Railroad should be made in the same way.

" When, in the case of freight shipped over its line, intended to be carried over or to points along the Lehigh Valley

Railroad, the Central Railroad Company of New Jersey have fulfilled their 'complete duty when they, under the law, have delivered at the end of the Lehigh Valley Railroad the freight or the cars containing the freight to the Lehigh Valley Railroad Company. In the absence of any contract or any agreement, or in the absence of any understanding or custom, all that could be required of the Central Railroad Company of New Jersey would be to bring the cars containing the freight intended for different points along the Lehigh Valley Railroad, or for shipment through the Lehigh Valley Railroad, to the end of the Lehigh Valley Railroad Company's tracks, and there leaving it in charge of the Lehigh Valley Railroad employees and go away. That would be complete delivery, and all that is required of them under the law.

"You will readily see that delivery of this kind, however, would be dangerous and inconvenient in its character, dangerous because of obstructing the tracks, inconvenient because of the interruption to travel which it would create. Therefore, for the purpose of avoiding such danger and preventing such inconvenience, either by reason of a contract, or by reason of a custom, which would be a contract by implication, the Central Railroad of New Jersey go upon the property of the Lehigh Valley Railroad Company with its engine, with its crew, taking with them the cars intended for the Lehigh Valley Railroad Company, to a mile or so beyond its terminus to the yard of the Lehigh Valley Railroad Company, and there putting these cars out of the way upon a siding, such sidings as they may be directed to place them by the yard master of the Lehigh Valley Railroad Company, under the directions of the officers of the Lehigh Valley Railroad Company, and leave them there in the custody of the Lehigh Valley Railroad Company—what the consideration is for the performance of this duty by the Central Railroad of New Jersey in place of the Lehigh Valley Railroad Company, does not appear in the testimony, and it is not proper that it should appear; presumably it is the performance of a like duty of the Lehigh Valley to the Central Railroad Company of New Jersey.

["Therefore, when the Central Railroad Company of New Jersey took the cars containing the freight intended for points along the Lehigh Valley Railroad, or for shipment over the line·

of the Lehigh Valley Railroad, to the yards of the Lehigh Valley Railroad Company, they did that duty by the direction of the officers of the Lehigh Valley Railroad Company, in the way in which they were ordered by the officers of the Lehigh Valley Railroad Company, and they were doing a duty which belonged to the Lehigh Valley Railroad Company; and, while it is the act of the Central Railroad of New Jersey it is also the act of the Lehigh Valley Railroad, because it is a performance by them of labor by reason of their employment, by the Lehigh Valley Railroad Company, for that purpose.

" It is not a license; it is not a right because of any existing custom. It is an employment of the Lehigh Valley Railroad Company of the Central Railroad Company of New Jersey to do that which it is the Lehigh Railroad Company's duty to do, for which there is a proper consideration.] [1]

" [In that view, the employees of the Central Railroad Company of New Jersey engaged in that work while they are on the tracks of the Lehigh Valley Railroad Company in the performance of what would be, under the law, the duty of the Lehigh Valley Railroad Company, become the employees of the Lehigh Valley Railroad Company, and injury caused by them or either of them to an employee of the Lehigh Valley Railroad Company by the negligence of themselves, is the negligence of a co-employee—of a fellow servant, for which there can be no recovery if the party injured is also in the employ of the Lehigh Valley Railroad Company.] [2]

" I can make it more clear perhaps by illustration. Corporations are precisely the same as individuals. We are apt to get confused in considering the rights of corporations, because we are apt to forget that the same laws apply to individuals also govern corporations, and the laws that govern corporations also apply to individuals, unless there is something in the law itself which indicates a different purpose.

" [Suppose Mr. Shipman and I had adjoining farms in Northampton county, and I went to Mr. Shipman and said to Mr. Shipman ' send your hired man over with your team and your plow and help me plow my fields, and I in return will send my men, my teams and my plow back to you.' He does it. While that man is there, he is paid by Mr. Shipman; while that man is there he is doing my work, and while he is doing my

work on my farm, he, by reason of his negligence, injures my hired man, is Mr. Shipman responsible for that? Most assuredly not. That is an act of a fellow servant, the negligence of a fellow servant. I employ that man not directly by a contract with himself, but through Mr. Shipman to whom his time is due, and by agreement and by consideration given to Mr. Shipman, he becomes, by reason of my contract with Mr. Shipman, my servant while he is doing my work; and, therefore, if by his negligence my hired man is injured, it is the negligence of a fellow servant for which there can be no liability.] [3]

" Now substitute for Mr. Shipman and myself two partnerships who in the same way employ each other's employees, it does not alter the law. Instead of firms, substitute railroads, it does not alter the law. Therefore, the application of that principle of law to this case makes it impossible for this plaintiff to recover.

" The question of contributory negligence is one that is involved in some doubt. What my duty might be in the event that I considered it my duty to consider whether I should submit that question to you, I have not yet determined, nor is it necessary, in the view of the case which I have already taken, to determine it—that is to say, whether it was contributory negligence on the part of the decedent, Vannatta, in not going to the head of the train to see whether in making the flying switch the train had cleared the head of the switch, a number of witnesses testifying that that was a matter of frequent occurrence; whether it was contributory negligence on his part in not going to the head of the train, before going to work, to see whether this train was cleared, or whether he had a right to rely upon the system of working in that yard, to send a brakeman back to notify the car inspectors that the train had not cleared; and that not having done so that morning, he had a right to assume that they had cleared that switch—whether, under the circumstances, that constitutes contributory negligence or not is a serious question which I have not determined; nor have I taken into consideration in this connection whether the absence of a blue flag, in accordance with rule 6, which obliges them to put up a blue flag when the car inspectors are at work, and which was neglected at the time of this injury, was negligence.

" I perhaps would not have so much doubt as to the evidence of contributory negligence which the omission to display the flag would be, if it were not for the fact that had they displayed the blue flag that morning, the testimony is that the engineer and the crew upon the train could not have seen it, and, therefore, it would have been a useless precaution, and would not have prevented this accident. I am convinced, however, that if the testimony had shown that the display of the flag that morning at the head of the train, where the rules required that it should have been placed, would have prevented this accident, the omission to do it, taken in connection with the other testimony, would have been such evidence of contributory negligence as would have prevented this plaintiff from recovering.

" [So, too, as to the application of the act of 1868—whether according to the terms of the act of 1868 it applies to a case. such as we have under consideration or not, it is not necessary to determine."] [4]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–4) instructions in brackets, quoting, them; and (5) in directing a verdict for defendant.

*W. C. Shipman, J. C. Merrill* with him, for appellant.—Appellee's right was a mere license upon the tracks of the deceased's master, and was there like any other person having goods to deliver to the Lehigh Valley Railroad for transit. There was merely right of entry under and subject to the terms of the license. It was therefore pure assumption for the court below to say as a matter of law that the appellee was engaged in doing the work and duty of the Lehigh Valley which the Lehigh Valley was legally bound as a common carrier to do for its customers.

When one carrier agrees to accept goods for shipment beyond its own lines, it must deliver those goods to the next carrier. It is not the duty of the second carrier to go and get the goods : Hutchinson on Carriers, sec. 102 ; Pratt v. Ry. Co., 95 U. S. 43.

A workman who has been injured by the act or negligence of his fellow workman must look for his compensation to him who was the author of the wrong and not to their common employer : Ross v. Walker, 139 Pa. 42 ; Wood's Master and Servant, ch. XIV.

The immediate employer of the servant who causes the injury is alone responsible: Sh. & Redf. Neg. § 162; R. R. v. Armstrong, 49 Pa. 186; McKinney's Fellow Servant, 43; Blake v. Ferris, 1 Selden (N. Y.), 48; Painter v. Pittsburgh, 46 Pa. 213; Michael v. Stanton, 3 Hun, 462; Murray v. Currie, L. R. 6 C. P. 24; Com. v. R. R., 126 Mass. 61.

The act of 1868 does not apply in this case: Spisak v. Railroad, 152 Pa. 283.

It was the Central Company's duty to instruct their employees to pursue the rules of the Lehigh Valley and furnish them with the schedule. Its omission constitutes a ground of action against the master, who is liable for damages therefor: Slater v. Jewett, Receiver, 85 N. Y. 61; Lewis v. Seifert, 116 Pa. 628; Ross v. Walker, 139 Pa. 48; Patterson's Railway Accident Law, 296; Wood's Master and Servant, § 403.

The deceased was not guilty of contributory negligence.

*Edward J. Fox*, for appellee.—Servants who are employed and paid by one person may be quoad hoc servants of another in a particular transaction, and that too where their general employer is interested in the work: Sh. & Redf. § 161; Oil Creek Co. v. Keighron, 74 Pa. 317; Murphy v. Caralli, 3 H. & C. 462.

The case is within the act of 1868: Mulherrin v. Del., L. & W. R. R., 81 Pa. 366; Cummings v. Cin. & St. L. Ry., 92 Pa. 82; Kirby v. Penna. R. R., 76 Pa. 506; Ricard v. N. P. R. R., 89 Pa. 193; Penna. R. R. v. Price, 96 Pa. 256; Stone v. Penna. R. R., 132 Pa. 206; Spisak v. R. R., 152 Pa. 281.

The deceased was guilty of contributory negligence: Campbell v. R. R., 17 W. N. 73. The negligence of an employer is waived by an employee remaining in employment without protest or promise of amendment. It is no matter if danger signals are used on other roads, for he was not deceived as to the degree of danger incurred: Brossman v. R. R., 113 Pa. 490; Rummel v. Dilworth, 131 Pa. 509.

Any employee who undertakes an employment with full knowledge of the rules, regulations and methods of doing such business cannot recover from his employer for an injury happening to him which results from such rules or methods: Kelley v. Chicago R. R., 53 Wis. 74; C. & N. W. R. R. v. Donahue,

75 Ill. 106; R. R. v. Barber, 5 Ohio St. 541; Wright v. R. R., 25 N. Y. 562; Baxter v. Roberts, 44 Cal. 187; O'Rorke v. Union Pacific R. R., 22 Fed. R. 189; Oleson v. Chicago R. R., 38 Minn. 412.

Car inspectors are held to be fellow servants with brakemen and other train hands: Donaghy v. P. & R. R. R., 21 W. N. 154; Wonder v. R. R., 32 Md. 411; Smith v. Potter, 2 A. & E. R. R. Cas. 140; Mackin v. R. R., 15 A. & E. R. Cas. 196; Little Miami R. R. v. Fitzpatrick, 17 A. & E. R. R. Cas. 578; Chicago & Alton R. R. v. Murphy, 5 Am. R. 48.

OPINION BY MR. JUSTICE THOMPSON, April 17, 1893:

At South Easton the Lehigh Valley Railroad Company has a yard in which are sidings for the reception of its trains. Its yard master designates by signals the sidings to which trains are to be sent. The appellant's husband was employed by it as an inspector of cars in this yard. On June 30, 1891, the Central Railroad Company of New Jersey, whose railroad connects with that of the Lehigh Valley Railroad Company, sent into this yard a mixed train, consisting of box, flat and coal cars. The men in charge of it were known as a drill crew and made with it a "flying drill." This is accomplished by putting the train into rapid motion and while thus moving cutting loose the locomotive from it, and by its momentum running it into the designated siding. This was done with the train in question and its conductor delivered his waybills for it to the yard master and train dispatcher of the Lehigh Valley Railroad Company. He then mounted his locomotive; the head brakeman and crew left the train upon the siding and some of them also mounted the locomotive. It was testified by some of the witnesses that a whistle was blown and that the locomotive started back to Phillipsburg. Upon the arrival of the train upon the siding appellant's husband began to inspect its cars, and while so engaged under the second car at the west end of the train the Central Railroad Company's employees, finding that the train had not entirely cleared the siding, returned with their locomotive, and pushed it forward. Appellant's husband was at this time under the bumpers, was unable to crawl out and was killed.

The learned trial judge held that when the Central Railroad

Company of New Jersey took its cars for·shipment over the line of the Lehigh Valley Railroad Company to the yards of that company it did that duty by the direction of the officers of the Lehigh Valley Railroad Company, and it did a duty which belonged to it. That while it was the act of the Central Railroad Company it was also the act of the Lehigh Valley Railroad Company, because it was a performance by it of labor by reason of its employment by the last named railroad company. That the employees of the Central Railroad Company, while so engaged upon the tracks of the Lehigh Valley Railroad Company in performance of a duty of that company, became its employees, and that an injury caused by them or either of them to an employee of the Lehigh Valley Railroad Company, by the negligence of themselves, is the negligence of a co-employee, for which there can be no recovery.

The vice of the position lies in the assumption that the point of the connection of the two railroads was the actual place of delivery of the train, and that all that was done between that point and the siding in the yard of the Lehigh Valley Railroad Company was done in performance of a duty which the latter company was required to do. A connecting carrier is bound to deliver the goods to a succeeding one, or at least be ready to deliver them. It has the right to decline freight not delivered within reasonable times before the departure of trains, or when not delivered at the place designated for the delivery. ·

" The liability of a connecting carrier does not begin, and the duty of the first carrier is not completed until there has been an actual delivery to the connecting one: " American and English Encyclopedia of Law, volume 2, page 869.

In the present case there was no delivery intended at the point where these roads connected with each other, but the place of delivery was upon a designated siding in the yard of the Lehigh Valley Railroad Company, and when therefore the train in question was placed upon the siding so designated, and the train accepted by the latter company, it was then a delivery. This train was placed upon the siding, the waybills were delivered, the crew of the Central Railroad Company in charge of it left it, the engineer of the locomotive whistled and started to return to New Jersey, as testified by some of the witnesses. The receipt of the train upon the siding, the delivery of the

waybills, the leaving of the train by the employees of the Central Railroad Company, placed that train in the control of the Lehigh Valley Railroad Company, and was a delivery of the same: Pratt v. R. R., 95 U. S. 45.

It cannot be said that because the yard master designated the siding upon which the train was to be placed, it, from the time of such designation, became that of the Lehigh Valley Railroad Company, and the Central Railroad Company became a mere employee of the first named company. The yard master of the Lehigh Valley Railroad Company indicated where the trains were to be placed upon the sidings by the connecting company. Such designation of a siding did not change in any way the custody or control of the train. The Central Railroad Company's employees remained as such in charge until the delivery of the train upon the siding indicated. It is necessary to have a yard master to designate in yards the sidings for the receipt of trains, otherwise such confusion would arise as to practically impede the business of the yard. The designation by such yard master did not constitute a delivery to the Lehigh Valley Railroad Company or an acceptance by it of the train. If it did not, the control of that train did not pass to that company. It follows therefore that the Central Railroad Company while thus moving the train to the siding was not an employee of the Lehigh Valley Railroad Company. It was about making its delivery to that company and was not doing any duty to be performed by the Lehigh Valley Railroad Company. When it placed that train upon the siding, delivered its waybills to the Lehigh Valley Railroad Company, withdrew its brakemen and conductor from it, whistled and signaled to return its locomotive to New Jersey and started back, it completed its delivery of the train. The learned trial judge therefore erred in holding that the Central Railroad Company of New Jersey while thus hauling the train in question from the connection of the two roads to this point was an employee of the Lehigh Valley Railroad Company.

As to the application of the act of 1868, relating to railroad companies and common carriers, defining their liabilities, etc., the learned trial judge expressed no opinion, because he said it was not necessary under his view of the case to decide the question. As the case must be retried it is proper that the

question should be determined. The act provides " That when any person shall sustain personal injury or loss of life while lawfully engaged or employed on or about the roads, works, depots, and premises of a railroad company, or in or about any train or car therein or thereon of which company such person is not an employee, the right of action and recovery in all such cases against the company shall be such only as would exist if such person were an employee." In the late case of Spisak v. Baltimore and Ohio Railroad Company, 152 Pa. 283, in which Mr. Justice MITCHELL classifies the cases upon this act, in concluding, he says : " The railroad company had delivered the car, its duty in that respect was ended, and its further duty of taking it out had not begun. The intermediate unloading, shifting and weighing the car was the work of the steel company, done for it, on its own land by its own employees. The connection of the railroad company with the place of the accident by reason of its joint use of the tracks for other purposes was an immaterial circumstance that did not affect the relations of the plaintiff to it, or the work he was engaged in."

It will be observed in that case that the crew had actually delivered the car to the steel company and that although there was a joint use of the track by the steel company and the railroad company the plaintiff was not within the statute. In the present case, this train of cars having been delivered to the Lehigh Valley Railroad Company, it would follow as in that case that the statute did not apply to the appellant's husband. At the time of the accident he cannot be treated as an employee of the Central Railroad Company. He was not working about its cars or its railroad, but on the contrary was engaged in work about the cars of the Lehigh Valley Railroad Company, and about its track.

It was contended that the present case was within the rulings of Mulherrin v. R. R., 81 Pa. 366, and Stone v. R. R., 132 Pa. 206. It will be found that in the first case one company owned the track and the other had the right of trackage for its cars. There were two railroad companies operating, under an agreement, one track. It was thus substantially the road of each company and the court held that it was not a question of the extent of the title. It was by reason of the joint agreement the road of the defendant, and this was sufficient to bring

the case within the act of 1868.  In the second case the plaintiff when injured was working about a train of defendant in charge of its employees.  In the present case the Central Railroad Company delivered its train upon the siding in question. The siding was in no sense its road and it was not operated by it.  The act of 1868, the act in question, does not apply to the appellant's husband in this case.

The learned trial judge expressed no opinion in his charge upon the subject of contributory negligence.  Where there is a reasonable doubt as to the facts or the inferences from them, the question of negligence is a question for the jury.  In this case, as there are reasonable doubts both as to the facts as well as to the inferences, the question of contributory negligence with proper instructions is one for the jury.

Judgment reversed and a venire facias de novo awarded.