YARRINGTON v. DELAWARE & HUDSON CO.

(Circuit Court, M. D. Pennsylvania. January 29, 1906.)

No. 31.

1. COURTS—STATE AND FEDERAL COURTS—RULES OF DECISION—STATE STATUTES.

The construction given by the highest court of a state to the local statute law regulating the liability of railroad carriers is binding upon the federal courts.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 957.]

2. CARRIERS—NEGLIGENCE—PASSENGERS—MAIL CLERK—ACT PA. APRIL 4, 1868 —QUASI EMPLOYÉS.

By reason of the local Pennsylvania act of April 4, 1868 (P. L. 58), as construed in Railroad v. Price, 96 Pa. 256, although contrary to the great weight of authority elsewhere, a railway mail clerk is not a passenger, and according to the provisions of the statute, in case of personal injury while engaged in the performance of his duties on or about the road, works, depots, or premises of a railroad, or any train or car thereon, can only recover of such company the same as one of its own employés.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 979.]

**3. SAME—JOINT TRACKAGE RIGHTS OF DIFFERENT ROADS.**

Where, however, two railroads have joint trackage rights over the same track, and an employé of one of them is injured thereon by the negligence of the other company, the following rules of construction of the statute have been established:

(a) The track, for the application of Act Pa. April 4, 1868 (P. L. 58), must be regarded as the property of each road, while using it, whether the use be by virtue of joint or several ownership, charter rights, lease, license, or traffic agreement.

(b) Where the place of the accident is clearly and for general purposes the road, works, depots, or premises of the railroad company defendant, it is sufficient for the application of the act, if the person injured is engaged or employed in and about such road, works, depots, or premises, and is not a passenger.

(c) Where, however, the accident occurs in a place which is not exclusively and for general purposes, but only within a limited and statutory sense, the premises of the defendant railroad, the nature of the employment at which the party was engaged at the time of the injury becomes material; and if it was so connected with the railroad that it is ordinarily the duty of railroad employés, then while engaged at it the statute treats the party as a quasi employé and puts his right to recover on that basis. But if the work has no relation to railroad work as such, and is only connected with it by the circumstance of locality, the case is not within the statute at all.

(d) In case of joint trackage rights, therefore, to bring the case within the statute, the person injured must not only be employed in and about the premises of the railroad by whose negligence he is injured, as so defined, but engaged at work which is ordinarily the work of the employés of that company.

**4. SAME—RAILWAY MAIL CLERK—WHEN NOT WITHIN ACT OF 1868.**

Hence, where the plaintiff, a railway mail clerk, was injured in a collision between a passenger train of the Erie Railway, on which he was engaged in the performance of his duties, and the rear end of a freight train of the defendant company, having joint trackage rights at that point over the tracks of the Erie Railway, whose road it was, which freight train was running on the time of the passenger train and had failed to properly flag it, *held*, that Act April 4, 1868 (P. L. 58), did not apply, and that the defendant company was liable; the place where the accident occurred not being by right the premises of the company at the time, nor the plaintiff engaged in work ordinarily performed by its employés.

(Syllabus by the Court.)

Rule for a New Trial.

W. D. B. Ainey, for plaintiff.

Lewis E. Carr and James H. Torrey, for defendant.

ARCHBALD, District Judge. The plaintiff was injured by the negligence of the defendant while engaged in the performance of his duties as a railroad mail clerk, in the employ of the general government. His run was from Susquehanna to Wilkes-Barre, both in Pennsylvania; the first half of it to Carbondale being on the trains of the Erie Railroad, over the Jefferson branch of that company; and it was while riding on one of its trains, south-bound, that his injuries were received, by a collision with the rear end of a freight train of the Delaware & Hudson Company, defendant, which was pulling into the Carbondale yard. The Delaware & Hudson Company has trackage rights over this branch of the Erie Railroad, its trains being subject, however,

to the direction and orders of the dispatcher of that road, as well as its rules and timetables. The accident was caused by the failure of the crew in charge of the freight train to get out of the road of the Erie passenger on which the plaintiff was riding, which they knew was closely following them and had the right of way, and on whose time they were in fact running; or, not succeeding in this, to properly flag it. The jury found a verdict for the plaintiff of $1,000, and the defendant now asks for a new trial upon the ground that under the statute law of Pennsylvania it was not liable.

As a matter of general law, aside from any local statute, a railway mail clerk, while engaged in the performance of his duties, is unquestionably to be regarded as a passenger, and entitled to the rights and immunities growing out of that relation. This ·is decided by courts of the highest character, the authority of which is not to be resisted. Nolton v. Western Railroad, 15 N. Y. 444, 69 Am. Dec. 623; Seybolt v. N. Y., L. E. & West. R. R., 95 N. Y. 562, 47 Am. Rep. 75; Collett v. Lond. & N. West. R. R., 16 Q. B. 984; Gleason v. Va. Midland R. R., 140 U. S. 435, 11 Sup. Ct. 859, 35 L. Ed. 458; Balt. & Ohio R. R. v. Voight, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560; Arrowsmith v. Nashville, etc., R. R. (C. C.) 57 Fed. 165; Farley v. Cin., H. & D. R. R., 108 Fed. 14, 47 C. C. A. 156; Ohio & Miss. R. R. v. Voight, 122 Ind. 288, 23 N. E. 774; Clev., Cin., Chic. & St. L. v. Ketcham, 133 Ind. 346, 33 N. E. 116, 19 L. R. A. 339, 36 Am. St. Rep. 550; Balt. & Ohio R. R. v. State, 72 Md. 36, 18 Atl. 1107, 6 L. R. A. 706, 20 Am. St. Rep. 454; Norfolk & Western R. R. v. Shott, 92 Va. 34, 22 S. E. 811; Houston & Tex. Cent. R. R. v. Hampton, 64 Tex. 427; Gulf, Col. & Santa Fé R. R. v. Wilson, 79 Tex. 371, 15 S. W. 280, 11 L. R. A. 486, 23 Am. St. Rep. 345; Hammond v. North East R. R., 6 S. C. 130, 24 Am. Rep. 467; Libby v. Maine Cent. R. R., 85 Me. 34, 26 Atl. 943, 20 L. R. A. 812; Magoffin v. Mo. & Pacific R. R., 102 Mo. 540, 15 S. W. 76, 22 Am. St. Rep. 798; Mellor v. Mo. & Pacific R. R., 105 Mo. 455, 16 S. W. 849, 10 L. R. A. 36; Louisv. & Nashville R. R. v. Kingman (Ky.) 35 S. W. 264; Weaver v. Railroad Company, 3 App. D. C. 436. As is said by Morris, J., in Ches. & Ohio R. R. v. Patton, 23 App. D. C. 113:

"Except under exceptional circumstances and with due regard to the duties which he is required to perform a postal clerk upon a railroad train is as much a passenger and entitled to all the rights and immunities of passengers, as any person on the train, transported under the ordinary contract of hire."

He is, "in no sense," as it is declared, "an employe of the railroad company. He has no function whatever in the management of the train, or of the railroad. He is to all intents and purposes * * * in the place of a passenger for hire, and, as such, entitled to safe transportation and reasonable guaranty against the negligence of the employes of the railroad company." Similar rulings have been made with regard to express messengers (Blair v. Railroad, 66 N. Y. 313, 23 Am. Rep. 55; Brewer v. Railroad, 124 N. Y. 59, 26 N. E. 324, 11 L. R. A. 483, 21 Am. St. Rep. 647; Pennsylvania Company v. Woodworth, 26 Ohio St. 585; Jenkins v. Railroad, 15 Ont. App. 477), persons riding on a drover's pass (Railroad Company v. Lockwood, 17 Wall.

357, 21 L. Ed. 627), or those privileged to conduct a business on the train, by arrangement with the carrier (Com. v. Vermont, etc., R. R., 108 Mass. 7, 11 Am. Rep. 301, Yeomans v. Contra Costa Nav. Co., 44 Cal. 71).

By act of the General Assembly of the state of Pennsylvania of April 4, 1868, § 1 (P. L. 58), it is provided, however:

"When any person shall sustain personal injury or loss of life while lawfully engaged or employed on or about the roads, works, depots, and premises of a railroad company, or in or about any train or car therein, or thereon, of which company such person is not an employé, the right of action and recovery in all such cases against the company shall be such only as would exist if such person were an employé; provided, that this section shall not apply to passengers."

Construing this act, it was decided in Pennsylvania Railroad v. Price, 96 Pa. 256, that a railway postal clerk such as the plaintiff, engaged in his duties on a railroad train, was not a passenger within the meaning of the proviso, and being employed in and about the railroad was thus within the terms of the statute, and the company were only liable to him for personal injuries caused by negligence, to the extent that they would be to an employé. "Was the deceased a passenger within the meaning of the act of 1868?" says Paxson, J. "Looking at the mischief which the act was intended to remedy, the answer to this question is not difficult. The deceased was 'lawfully employed upon the road.' He was therefore within the precise language of the act, and must be held to have had the rights only of an employé, unless he comes within the exception. The word 'passenger,' in the proviso, must be understood in its ordinary and popular signification. Had the question been asked of any person, intelligent, or otherwise, upon this train when the accident occurred, whether * * * the deceased was a passenger, * * * the answer would have been in the negative; that he was employed on the train as a mail agent. Why, then, should we give the proviso a forced construction, not warranted by its language, and repugnant to our common sense? It was urged that the deceased was a passenger because under the act of Congress; * * * 'Every railway company carrying the mail shall carry on any train which shall run over its road, and without extra charge therefor, all mailable matter directed to be carried thereon, with the person in charge of the same.' This act makes it the duty of the company to carry the mail agent without extra charge, but it no more makes him a passenger than it does the mail matter of which he has the care. The company have no control of him as they have over passengers for whose safety they are responsible. He is not bound to observe any of the rules prescribed for the protection of passengers. He may expose his life in the most reckless manner. The mail car, like the baggage car, is a known place of danger. From its position it is peculiarly exposed to destruction in cases of collision. The effect of the act of Congress is to make his position on the car a lawful one. Being lawfully upon the train, a recovery might possibly have been had for his death upon the duty to carry safely; Collett v. Railway Co., 16 Q. B. 984, and Nolton v. Western Railway Co., 15 N. Y. 444 [69 Am. Dec. 623], go

to this extent. But here the act of 1868 comes in and declares that persons employed upon the road shall have only the rights of employés of the company."

This decision was carried to the Supreme Court of the United States, but gains nothing from that circumstance; the writ of error being dismissed on the ground that no federal question was involved. Price v. Pennsylvania Railroad, 113 U. S. 218, 5 Sup. Ct. 427, 28 L. Ed. 980. It depends for acceptance, therefore, entirely on its own merits, and I have to confess that it does not impress me favorably. Not only, as it seems to me, does it contain several doubtful assumptions involving more than one non sequitur, but it stands absolutely alone, being opposed to the overwhelming weight of authority to the contrary. As the consequence of this, moreover, we have the anomalous result that whenever a railway mail clerk is carried into or through Pennsylvania, on an interstate run, his status changes as he crosses the state line, being accorded the rights of a passenger for one part of his journey, and not the rest of it, unless, perchance, the interstate character of it should be held to interfere. It was followed however in the recent case of Foreman v. Pennsylvania Railroad, 195 Pa. 499, 46 Atl. 109, and must therefore be regarded as the settled law of the state; and notwithstanding what has thus been said of it, to the extent that it is applicable, it is controlling here. It does not simply decide that a railway mail clerk is not a passenger, although that is involved in it. If this were all, that being a question of general law (Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627), I should not feel bound by it. But what it decides is that a railway mail clerk is not a passenger, within the meaning of the act of 1868, whereby the company is relieved from responsibility. In this, it interprets the state statute by which the subject is regulated, and, however much I may be inclined to criticize it, it governs locally and cannot be disregarded. The only question, therefore, is whether it applies to the state of facts which we have here.

If the present action were against the railroad on whose train the plaintiff was riding, he would come within the act of 1868, according to this decision, and the company, under the circumstances, would not be liable. But the case is not so simple as that. The accident was the result of negligence on the part of the employés of another and distinct company, the defendant here, on a railroad over which it simply had trackage privileges, and the question is whether it has the right to invoke the act. It was held not at the trial, and it is the propriety of this ruling that is now in controversy. Except as the act of 1868 applies, the plaintiff having no relation to the defendant, that company would, of course, be liable. Catawissa R. R. v. Armstrong, 49 Pa. 186. But although the track on which its train was running was not owned by it, it had rights of trackage there, and the road for all necessary purposes was thus for the time being its own. Mulherrin v. D. L. & W. R. R., 81 Pa. 366. If, then, the plaintiff is to be regarded as employed in and about it at the time of the accident he is brought within the terms of the act, and so is not entitled to recover, any more than he would be against the company on whose

train he was being carried. What, then, is there to relieve him from this result?

All things considered, the most natural and obvious construction to be given to the act of 1868 would seem to be that the employment which is there referred to, by which parties engaged in and about the premises of a railroad are made to acquire the character of quasi employés, should be such 'as is ordinarily performed by the company's own workmen; and to a certain extent, although not entirely, this view has been adopted by the state courts. In Spisak v. Balt. & Ohio R. R., 152 Pa. 281, 25 Atl. 497, in a most carefully considered opinion, it is pointed out by Mitchell, J., that the cases under the act of 1868 divide themselves into two classes. In the one, when the place of the accident is clearly and for general purposes the "roads, works, depots, or premises," of the railroad company, it is sufficient, if the person injured is "engaged or employed on or about them," and is not a passenger; to which class belong, as it is said, Kirby v. Railroad Company, 76 Pa. 506; Ricard v. Railroad Co., 89 Pa. 193, and Balt. & Ohio R. R. v. Colvin, 118 Pa. 230, 12 Atl. 337. The other class is where the accident occurs in a place which is not exclusively and for general purposes, but only within a limited and statutory sense, the premises of the railroad; in which case, the nature of the employment at which the party was engaged at the time of the injury becomes material. "If it is business connected with the railroad in the sense that it is ordinarily the duty of railroad employes, then, while the party is engaged at it, the statute treats him as a quasi employé and puts his rights upon the same basis. If, however, the work has no relation to the railroad work as such, and is connected with the railroad only by irrelevant and immaterial circumstances of locality, the case is not within the statute at all."

To this second class, according to the opinion, belong Mulherrin v. Railroad, 81 Pa. 366, Cummings v. Railroad, 92 Pa. 82, and Stone v. Railroad, 132 Pa. 206, 19 Atl. 67, in each of which, although the circumstance may not have been alluded to, the party injured was engaged in work ordinarily performed by employés of the railroad, which thus brought the case within the provisions of the act; and, also, Richter v. Railroad, 104 Pa. 511, and Christman v. Railroad, 141 Pa. 604, 21 Atl. 738, in which the party was not so engaged, being employed in the one case, in wheeling ashes from the furnace to the cinder pile of a rolling mill across a siding belonging to the mill, but operated by the railroad, and in the other in carrying into a rolling mill a pile of iron which had been unloaded from the defendant's cars, in view of which it was held in both that the act did not apply. Spisak's Case, in which these observations were made, was declared to belong in the second class. It appeared by the evidence that he was a brakeman on a shifting engine belonging to a steel company which was engaged in moving cars from point to point in its yard. The track on which he was injured was on the land of the steel company and was its property, but the defendant railroad had the right to use it in its business with the steel company. There were two spur tracks or sidings, a receiving track to which the railroad brought cars, and a delivering track from which it took them. Between the receipt and the delivery

of the cars, they were under the exclusive control of the steel company, and were shifted about, unloaded, and reloaded, entirely at its will and by its employés. The work was considerable in amount, and the steel company had supplied itself with a locomotive in order to dispose of it, on which the plaintiff was brakeman. A car had been unloaded while on the receiving track, and the yard boss directed the plaintiff to take the shifting engine there, and move the car to the scales in order to take its light weight; and while doing this he was injured. It was held that the nature of his occupation at the time of the injury was the test of the applicability of the statute, and that the case was not within it. "The railroad company had delivered the car," says Judge Mitchell. "Its duty in that respect was ended, and its further duty of taking it out had not begun. The intermediate unloading, shifting, and weighing the car, was the work of the steel company, done for it, on its own land by its own employés. The connection of the railroad company with the place of the accident, by reason of its joint use of the tracks for other purposes, was an immaterial circumstance that did not affect the relations of plaintiff to it, or to the work he was engaged in. He was neither an employé in fact, nor doing work which made him a quasi employé under the statute."

This case was followed, and its principle applied, in Keck v. Philadelphia & Reading R. R., 206 Pa. 501, 56 Atl. 47, in an opinion by the same learned judge; a case which in its controlling facts approaches very closely to the one in hand. Before considering it, however, the intermediate case of Kelly v. Union Traction Co., 199 Pa. 322, 49 Atl. 70, requires notice.[1] In that case, two street railways, having equal charter rights on Arch street, Philadelphia, made use of the same tracks, of which there were two; the south track for cars east bound, and the north track for those going west.

At the eastern terminus on Front street, the south track was connected with the north track by two switches about 70 feet apart, extending northwestwardly for the cars to cross over. When two cars

[1] See, also, Vannatta v. Central R. R.. 154 Pa. 262, 26 Atl. 384, 35 Am. St. Rep. 823.

reached the terminus at or about the same time, it was the duty of the motorman on the most easterly to stop his car east of the easternmost switch, while the following car was stopped at a point intermediate between the two switches, and each, after reversing the trolley pole and changing the fender, crossed over by its own switch to the west-bound track. On the day of the accident two cars came to this point in this way; the head or most easterly one belonging to the defendant, and the one following it, on which the plaintiff was employed as conductor, to the other company. Each car was run to its appropriate place, and stopped preparatory to reversing its course, and going over onto the west-bound track. But the motorman of the defendant's car, having started back without turning the easternmost switch by which he should cross over, ran into and injured the plaintiff as he was standing at the east end of his car, between the two switches in the act of transferring his fender. Under these circumstances it was held that the act of 1868 did not apply, and that the defendant company was liable. "The south track on Arch street," says Mestrezat, J., "and especially that part of it at the place of the accident, being in the use of the Hestonville [that is the plaintiff's] company, was the road of that company within the terms of the act, and was not the road of the defendant company. The south track was essentially the road of the company whose cars were running east. Neither company used that track for west-bound cars, and when used for east-bound traffic it became the road of the company so using it. When, therefore, the plaintiff was injured he was lawfully engaged in the service of his employer, the Hestonville Company, on or about its road, and not on or about the road of the defendant company. The track at that point was in the use of the Hestonville Company, and therefore had, by agreement of the parties, become for the time being, the road of that company. Its employés in the operation of its cars had a right to be there, and they could enforce their right to protection against the negligence of every one save the co-employés of that company."

This brings us to Keck v. Phila. & Reading R. R., 206 Pa. 501, 56 Atl. 47, already noted, where the applicability of the act of 1868, in the case of joint rights by different railroads over the same roadbed is further considered. The plaintiff's husband there was a locomotive engineer in the employ of the Central Railroad of New Jersey, which, by arrangement with the defendant company, had certain trackage rights for its trains on the defendant's railroad, using its own engines and crews to move them. At the point of the accident there were two tracks, on one of which the Central Railroad train, on which the plaintiff's husband was the engineer, was running, and just as it came along a rear-end collision occurred between two of the defendant's trains on the adjoining track, by which the caboose of the one was thrown over onto the engine of the Central train, and the plaintiff's husband was killed. It was held that this did not present a case within the act, the plaintiff's husband, while engaged in railroad work as a locomotive engineer, not being in the employ of the defendant, nor upon premises which were to be treated as the defendant's at the time.

Summing up the result of the preceding cases, the following rules are deduced by the court therefrom. "First, where the same track is used by two railroad companies, it must be considered for the application of the act of 1868 as the property of each while using it. Secondly, whether the use be by virtue of joint or several ownership, charter right, lease, license, or traffic agreement, is immaterial. Thirdly, to bring the case within the second class distinguished in Spisak v. B. & O. R. R. Co., 152 Pa. 281, 25 Atl. 497, namely, those where the employment is ordinarily the duty of railroad employés, the plaintiff must not only be engaged in such work, but also be so engaged for or upon the property of the railroad by whose negligence he is injured. * * * Fourthly, in such cases the employés of each road accept the risks of their employment in regard to their own road but not those incident to the operation of the other road, unless at the time engaged in some work for the other or for both roads jointly." It is conceded that the distinctions which are thus made were not directly developed by the facts in the earlier cases; but it is claimed that the language of the opinions indicates the trend of thought on the subject, no case having been decided, as it is asserted, which upon its facts is out of harmony with the rules so laid down. Even the Mulherrin Case is said to be in accordance with them when carefully examined, it being significantly pointed out that the plaintiff there might have recovered had he been injured while the track on which he was walking was the track of his own company, and while he was engaged in the performance of his duty on it; the fact being, however, that it had become the track of the other company, his own train having left him and passed on.

There can be no question, as it seems to me, with regard to the conclusion to which these cases lead, as applied to the case in hand. The Erie passenger train, on which the plaintiff was riding when he was injured, had the right of way over the defendant's freight train with which it collided and the road by right was its road and not that of the defendant, entitling it to a clear passage thereon. It is true, that the defendant's freight train was occupying and using the track where it was, but it was doing so of wrong, so far as it intruded upon the time of and except as it took proper precaution to guard against the passenger train which it knew was following. Even on the basis of use and occupancy (which at the best was shifting and temporary) such part of the road as the freight train had passed over and off of, no longer belonged to it, so as to stand as the premises of the defendant, but became at once the road of the Erie, which both owned and had the right of way over it for its approaching train. As then the Erie train advanced, the track under it became its track, by right as as well as by occupancy, and ceased per force to be the track of the defendant company; and the plaintiff riding over it could not in any sense be said to be upon or employed about the defendant's premises when he was injured any more than the conductor in the Kelly Case, or the engineer in Keck v. Railroad.

Assuming, however, that this might not be so, according to the distinction made in Spisak v. Balt. & Ohio R. R. Co., 152 Pa. 281, 25 Atl.

497, the cases, in which joint traffic rights are enjoyed by different companies over the same road, fall into the second class there made; that is to say, in the words of the court, "where the accident occurs in a place which is not exclusively and for general purposes, but only within a limited and statutory sense, the premises of the railroad company." In proof of which it is sufficient to note that Mulherrin v. Railroad, where that was the fact, is assigned to that class. But, as declared in the Spisak Case, in this class the nature of the employment at which the party is engaged at the time of the injury becomes material; and it is only where this is of a kind that is ordinarily performed by employés of the railroad, that the act of 1868 applies and puts him on the basis of a quasi employé. Where that is not its character, however, and it has no relation to railroad work as such, it does not. Applying this in the Keck Case, it was held not to be within the act, the plaintiff's husband, although actually engaged in railroad work as a locomotive engineer, not being at work for the defendant company nor upon premises which were to be treated as belonging to it at the time. And as further illustrating this principle, according to what is said in the same case of Mulherrin v. Railroad, the plaintiff there by the same consideration, would have had his action, provided only he had been injured while in the performance of his duties as brakeman, on what was to be regarded as his own road.

In the present instance, then, not only was not the plaintiff on premises which could be claimed to be those of the defendant company, within the meaning of the act, but his duties as mail clerk had not the remotest relation to railroad work as such, and could not have been performed by employés of either company, being specially committed to him as agent and representative of the Post Office Department of the general government, which the fact that they were to be performed while being transported on a railroad train does not affect or change. To such a case, in whatever way we look at it, the act of 1868 does not apply, and cannot, therefore, be invoked to relieve the defendant of responsibility.

The rule for a new trial is discharged.