## BALT. & OHIO R. CO. v. JAMES COLVIN.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 28, 1887—Decided January 3, 1888.

A teamster employed by a shipper, while hauling freight to the car of a railroad company, was driving upon a public street at the freight station there crossed by the company's tracks at a point practically within the company's yard. So driving, the wagon was struck upon the crossing by a moving train and the teamster injured. In an action against the company charging negligence, *Held*:

1. That the teamster was within the act of April 4, 1868, P. L. 58, and the company was not liable for a negligent act of the flagman at the crossing.

2. That, the declaration not charging negligence in the employment of an incompetent flagman, it was error to admit evidence that the flagman had the reputation of being a careless person and incompetent for the place.

3. That it was error to refuse to charge that if, as alleged by the defendant, the flagman signaled the plaintiff to stop, and, in disregard of the signals, the latter urged his team forward upon the crossing, he was guilty of contributory negligence.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 114 October Term 1887, Sup. Ct.; court below, No. 533 July Term 1886.

The action below was in case for negligence by James Colvin against the Baltimore & Ohio Railroad Company to recover damages for personal injuries. The declaration, which was in two counts substantially the same, after averring the duty of the defendant company in the management of its trains at a crossing on Ross street, in Pittsburgh, and the driving by the plaintiff along said highway, charged:

Yet the defendant, not regarding its duty in the premises, by its servants and employees, induced the said plaintiff to believe that it was safe and prudent to pass over said crossing, and failed and neglected to give said plaintiff proper warning

and notice of the approach of said locomotive and cars ; and the said plaintiff lawfully advanced and with proper care, attempted to cross the said railroad of said defendant, when the said defendant, by its servants and employees, drove the said locomotive and train of cars so negligently, recklessly, carelessly and unskillfully, and with such excessive and improper speed, and without giving the customary and proper warning, that by reason thereof, the said locomotive engine and train of cars, then and there to wit, in the county aforesaid, were driven and impelled violently against the wagon aforesaid, whereby, etc.

At the trial on March 3, 1887, it appeared that on September 2, 1885, the plaintiff, a teamster driving for John Colvin & Co., was sent to deliver a wagon load of iron to cars in the freight yard of the defendant for shipment. As he reached with his load the corner of Water and Ross streets, he stopped until the freight receiver located the car desired and told him to which car to drive. The plaintiff then looked down Ross street, but, owing to the warehouses on both sides down to the point where the main tracks and sidings of defendant's railroad cross Ross street, he could see no part of the tracks except within the street lines. The flagman on the main track, as plaintiff testified, signaled him to drive on. He started down said street, which was of quite a steep grade, "going pretty quick," when, as he was crossing the third track, his wagon was struck by some moving passenger cars, was upset and thrown upon him causing the injuries for which suit was brought. The plaintiff also testified that he received no warning of danger until his horses were upon the track on which the train was approaching. As to the signal from the flagman to drive on, the plaintiff was corroborated by other testimony.

It was claimed by the defendant company, and evidence was introduced to show, that all that part of Ross street between Water street and the Monongahela river was practically nothing more than a driveway to and from the freight sidings of the defendant company, though the street had been laid out as a public highway to the river ; that the plaintiff had frequently delivered freight to cars upon the same siding to which

he was going and was thoroughly familiar with the situation. A number of witnesses were called who testified that the flagman did all in his power by signaling and shouting to deter him from coming on.

Richard Lucas, sworn for plaintiff, was a teamster, and was present when the collision occurred: Q. Do you know the general reputation of that flagman for care, at the time or before the time of this injury? Objected to, as incompetent and irrelevant. Objection overruled.[6] A. I heard a great many people say that he is not a capable man to be a flagman there; he neglects his business. I heard teamsters say so.

The testimony of John Boyd, Edward McCullough and of a number of other witnesses, to the same effect, was admitted under exception by the defendant.[6]

The court, MAGEE, J., so far as material to the cause as decided, charged the jury and answered the points presented as follows:

Two principles of law are applicable in this case, viz.: The injury must be the result of negligence on the part of the defendants and the plaintiff must not, by his negligence, have contributed to the injury sustained. The plaintiff, by his evidence, says that the accident happened on the middle of Ross street, a public highway in the city of Pittsburgh, while the horses of his team were on the third track and in the effort to cross the track, on his way to the defendant's yard with freight; that the tracks upon which he was caught are about seventy-five feet from Water street; that he stopped on the corner of Water street and Ross, or at the turn, and waited for the signals from the flagman at the crossing to come forward; that, upon receiving the signal to come forward he started his team with a load of sixty-five hundred pounds and reached the third track with his horses, when the wagon was struck by the train and he was injured.

I take it that a teamster, moving forward at the signal of the flagman, unless it be shown or appears from the evidence that he saw the danger himself or it was such as he ought to have seen, by the exercise of proper self care, would not be chargeable with contributory negligence in his conduct. [Another principle, I think, applies to the case: When a man,

without negligence on his part, becomes involved in immediate peril it is not to be attributed to negligence that he did not take the best means of escape. His judgment in the peril may be at fault, but it is regarded as a mistake and not as negligence on his part. If he is there, without negligence upon his part, the fact that he does not do the best thing that could be done is not evidence that he is negligent in what he does.] [9]

The plaintiff and the defendant both have their respective rights to the lawful and proper use of the street crossing. The crossing is testified to as a dangerous one, and the railroad company have placed a flagman there to warn parties against danger. [It is the duty of one who proposes to cross a railroad to stop at a proper place, and you are the judges under all the evidence of what is a proper place, and look and listen; and that would be the duty of the plaintiff here, unless relieved of that duty by a signal of safety from the defendants, and it would be the duty of the flagman of the company to be watchful and give warning of approaching trains, and of danger to those who propose to cross the tracks.] [10] If the company have a flagman there you have a right to look to the man for some protection, but you must not give up all duty and care for yourself. If the plaintiff failed to exercise the proper care required under the circumstances, he is a contributor to his own injury, and the law will not undertake to determine the proportions of negligence, but holds that in such case the plaintiff cannot recover at all. If the defendants alone have been negligent, then they become answerable for the injury in the absence of any other valid defence.

The defendants on their side say, that under the provisions of the act of April 4, 1868, P. L. 58, the plaintiff is to be regarded as an employee of the defendant company, and the rights and liabilities of the parties to this action are to be determined by the law applicable to persons in that relationship to one another. The act provides as follows: . . . . .

This act, I hold not to be applicable to this case, unless you find as a fact that the plaintiff, at the time of the accident, was engaged or employed on or about the premises of defendant company or on or about any car thereon; and that if the accident happened on a public highway before he was engaged or employed on the premises and in work pertaining to the

company operations, the act is not applicable to this case. If he was not so engaged or employed you will not regard his case as that of an employee of the company defendant. If you find, as a fact, from the evidence that he was so engaged or employed, then he is to be regarded as an employee, and in such case it is the law that the defendant would not be liable for an injury resulting to an employee from the negligence of his co-employee, unless you find as a fact, from the evidence, that the defendant has not exercised reasonable care and made reasonable provision for the safety of its employees. . . . .

The defendant company, in addition, say that they were not negligent in their duty; that they had a flagman at the Ross street crossing who was at his post at the time of the accident, and in proper time gave the plaintiff warning of the danger in crossing, and that in disregard of the warning given by the flagman, and of others who called out and waved to him to stop, at a place where it could be done, of course, the plaintiff drove his team on the railroad tracks and thereby occasioned the injury which he sustained. If the plaintiff neglected to be on the lookout, and by reason of his own carelessness, failed to heed warnings of danger, or noticing them disregarded them, he would be in law a contributor to his own injury, and could not in such case recover for the injury sustained. The crossing seems to have been known by plaintiff and defendant as a dangerous one, and as such required in its use a corresponding watchfulness. . . . .

Plaintiff's points:

1. When a railroad crossing is at the foot of a steep incline and the company keeps a flagman at the crossing, the law lays down no fixed rule that a party crossing on a heavy load of iron with two horses, must stop and look and listen immediately before crossing; nor was plaintiff bound, as a matter of law, to leave his team at the head of the incline and to approach the track on foot. If plaintiff stopped and looked and listened at the head of the incline and saw the flagman there on duty, then the question of whether plaintiff exercised proper care is for the jury.

Answer: Affirmed.[4]

2. The duty of the defendant is to have the signals by the

flagman so plainly given that they can be readily understood.

Answer: Affirmed.

Defendant's points:

1. That under the evidence the plaintiff suffered the personal injury, for which recovery is sought, while lawfully engaged or employed, on or about the roads, works, depots and premises of the defendant company in a business directly connected with defendant, and his case is therefore within the provisions of the act of April 4, 1868, P. L. 58, and his right of action only such as would exist if he were an employee of the defendant, and in such right, under all the evidence, he cannot recover.

Answer: Refused, unless from the evidence you find as a matter of fact that the plaintiff was engaged or employed on or about the premises of defendants. If the accident happened when the plaintiff was on the public highway, and before he had entered or used the premises of the defendants for the shipment of his goods, he would not in such case be subject to the provisions of the act of April 4, 1868.[1]

2. If the jury believe from the evidence that the plaintiff, at any point between the corner of Water and Ross streets and the main tracks of the railroad across Ross street, was signaled or warned by the flagman, or by other parties, to stop his team, and that he did not stop, he was guilty of negligence contributing to the injury and cannot recover.

Answer: Refused.[2]

3. That it is the duty of a party about to cross a railroad, to stop, look and listen immediately before crossing, at a point, and in a manner, where, and in which, he can assure himself, by the use of his senses of sight and hearing, that no train is approaching; and in this case, the plaintiff's own testimony disclosing that he failed to perform this duty, the verdict must be for defendant.

Answer: Refused.[3]

4. That the dangerous character of the crossing with which the plaintiff, under his testimony, was familiar, only made it necessary for him to exercise a greater degree of caution and prudence before crossing, than if it had been less dangerous.

Answer: Affirmed.

5. That the inquiry in reference to the conduct of the flagman must be confined to what he did, or omitted to do, upon

the day, and at the time of the accident; and his conduct at other times, or upon other occasions, is irrelevant and must be disregarded by the jury.

Answer: Affirmed.

The verdict of the jury was in favor of the plaintiff for $1,396, and, judgment having been entered, the defendant company took this writ assigning for error:

1–3. The answers to the defendant's points. [1] [2] [3]

4. The answer to the plaintiff's first point. [4]

6. The admission of plaintiff's offers. [6]

9, 10. The parts of the charge embraced in [ ] [9] [10]

*Mr. Johns McCleave*, for the plaintiff in error:

1. The declaration charged—not negligence of the company in their employment of an incompetent or habitually negligent flagman—but a negligent act on the part of the flagman, in signaling the plaintiff to drive on, upon one specific occasion. The plaintiff's testimony as to the general reputation of the flagman in respect of carefulness was, therefore, not admissible: Whart. Ev., § 48; Jacobs v. Duke, 1 Smith E D. 271. Besides, there was no evidence or offer of testimony to bring home to the defendant knowledge of the general reputation or general carelessness of the flagman. The affirmance of our fifth point did not cure this error, as the testimony, if erroneously admitted should have been immediately withdrawn: Huntingdon & B. T. R. Co. v. Decker, 82 Pa. 119.

2. The plaintiff was going on a driveway, the accustomed driveway for hauling freight to defendant's depots and cars; was crossing certain tracks on said driveway, for the purpose of delivering his freight into a car seventy-five feet from the place of accident. Was he not "lawfully engaged or employed on or about the roads, works, depots and premises" of the defendant, within the meaning of the act of 1868? There is no question of title in the matter. Was the plaintiff lawfully engaged on or about the roads, works, depots, or premises of the company, whether those roads, etc., were partly on the highway or altogether upon ground held by the company in fee? Mulherrin v. Railroad Co., 81 Pa.

366; Cumming v. Railway Co., 92 Pa. 82; Penn. R. Co. v. Price, 96 Pa. 265. The act manifestly intended to put upon the same footing all persons who, by their engagements or employments, might be brought in contact with the dangers incident to railway operation.

*Mr. S. W. Cunningham* (with him *Mr. T. D. Chantler*), for the defendant in error:

1. A statute in derogation of common law right, or giving exemption from a general burden attaching by law to all parties, is to receive a strict construction: Sedgw. Stat. & Const. Law, 271; Potter's Dwarris, 185; Moyer v. Slate Co., 71 Pa. 293; East Union Tp. v. Ryan, 86 Pa. 459. The act of 1868 was evidently intended to affect persons who voluntarily undertake a dangerous employment alongside railroad employees, and from whose negligence employees are in danger: Kirby v. Railroad Co., 76 Pa. 506; Mulherrin v. Railroad Co., 81 Pa. 366; Cummings v. Railroad Co., 92 Pa. 82; Penn. R. Co. v. Price, 96 Pa. 265; Ricard v. Railroad Co., 89 Pa. 193; Richter v. Penn. Company, 104 Pa. 511. The plaintiff passing upon a public street, where he had the same rights as the defendant company, had not yet commenced to work alongside defendant's servants. Neither party had an exclusive right: Shear. & Redf. Neg., 563, n. 3; North Penn. R. Co. v. Heileman, 49 Pa. 60.

2. But even if the plaintiff were within the act of 1868, the defendant's liability was still a question for the jury, for there was evidence from which negligence upon the part of defendant itself could be found. The defendant's flagman was generally reputed to be careless and incompetent. The proper way to show character is by evidence of general reputation: Frazier v. Penn. Company, 38 Pa. 104; Elliott v. Boyles, 31 Pa. 65; 2 Thomp. Neg. 1053; 1 Greenl. Ev., § 461; 1 Whart. Ev., § 252. In a suit against the master for the negligence of a co-servant, evidence of the character and habits of the latter is admissible; and when a servant is generally known to be incompetent, the master is chargeable with negligence for not knowing what his reputation is: 4 Wait Act. & Def. 416; Wood M. & S. 814–823; Ibid., §§ 416–421; Gilman v. Railroad Co., 10 Allen 233; Whart. Neg., § 237; Abbott Trial Ev.

593; Shear. & Redf. Neg., § 91; Whart. Ev., §§ 252–3; Kelsey v. Bank, 69 Pa. 426. These authorities show that from such evidence, the jury may find not only the character of the servant for care and fitness, but also the knowledge of the master of the known character of the servant.

3. But it is urged that this evidence of the general reputation of the flagman was inadmissible, because there was no count in the declaration charging negligence in retaining a careless or incompetent servant. It is submitted that no case in this state so rules. Besides, the objection below was not put upon this ground. If it had been, the declaration was amendable, as the same cause of action would have been preserved. What was amendable below is amendable here: 2 T. & H. Pr., §§ 2198–9; Knapp v. Hartung, 73 Pa. 290; Grove v. Barclay, 106 Pa. 155; Lebanon N. Bank v. Karmany, 98 Pa. 65; Carson v. Hunt, 14 Pa. 510; Leckey v. Bloser, 24 Pa. 401; Wampler v. Shissler, 1 W. & S. 365; Kelsey v. National Bank, 69 Pa. 426; Bank v. Hall, 107 Pa. 583; Morris v. McNamee, 17 Pa. 173; Waite v. Palmer, 78 Pa. 192; Mathias v. Sellers, 86 Pa. 486; Railroad Co. v. Stees, 77 Pa. 332; Lebanon N. Bank v. Karmany, 98 Pa. 65; East Union Tp. v. Comrey, 100 Pa. 362.

4. In a court of error, a party will not be heard to allege objections to evidence which were not made upon the trial, or on grounds other than those then assigned; and this rule is particularly applicable in a matter of variance: Keller v. Nutz, 5 S. & R. 246; Drexel v. Man, 6 W. & S. 343; Mills v. Buchanan, 14 Pa. 59; Fidler v. Hershey, 90 Pa. 363; Morton v. Funk, 6 Pa. 483; Miller v. Miller, 4 Pa. 317; Shoenberger v. Hackman, 37 Pa. 87; Brown v. Gilmore, 92 Pa. 40; East Union Tp. v. Comrey, 100 Pa. 362; Winton v. Little, 94 Pa. 64; Berks etc. Road v. Myers, 6 S. & R. 12; Plank Road v. Ramage, 20 Pa. 95; Garsed v. Turner, 71 Pa. 56. At all events, in a case of doubt and uncertainty as to whether a servant was guilty of negligence, such evidence as to his character is relevant to turn the scale, and is at most but anticipating the defence: Bigley v. Williams, 80 Pa. 107; Penn. R. Co. v. Books, 57 Pa. 339.

5. The ruling as to contributory negligence was not error. It was absolutely impossible for plaintiff to stop, look and lis-

ten, at a point where he could assure himself safety by his own senses : Penn. R. Co. v. Ackerman, 24 Pa. 265 ; Penn. R. Co. v. Garvey, 15 W. N. 498; Whart. Neg., § 420 ; Pierce Railroads, 344 ; Borst v. Railroad Co., 4 Hun 346.

OPINION, MR. JUSTICE WILLIAMS :

The controlling question in this case, is that raised upon the act of April 4, 1868. That act provides that in case an injury is sustained by any person " while lawfully engaged or employed on or about the roads, works, depots and premises of a railroad company, or in or about any train or car therein or thereon, of which company such person is not an employee, the right of action and recovery in all such cases against the company shall be such only as would exist if such person were an employee, provided that this section shall not apply to passengers."

The plaintiff in the court below was a teamster, and on the day of the accident engaged in hauling iron to a car in the yard of the defendant company for shipment. The yards and depots of the company in Pittsburgh are between Water street and the Monongahela river. The buildings used as waiting-rooms and freight houses extend along the south side of Water street, continuously from Grant street to Ross, and from Ross street to Try. The main tracks and sidings are between these buildings and the bank of the river. Access to the yard is therefore by passing down Ross street, between the warehouses of the company. Between the line of Water street and the river there are nine railroad tracks ; and the distance is about two hundred and fifty feet. At the bank of the river there is no bridge, ferry, wharf, or other structure, but the ground is occupied by the company. That part of Ross street therefore between the south line of Water and the river is chiefly used as a means of reaching the yard or freight cars of the defendant, and is practically a part of the yard.

The car to which Colvin was hauling iron on the day of the accident, stood on a track near the bank of the river, and about seventy-five feet west of the line of Ross street. In order to reach it, his route was down Ross street, a distance of about one hundred and fifty feet, crossing five or six tracks, and then turning west along what was known as the coke track, a distance of perhaps seventy-five feet more. He had

turned into Ross street, crossed three or four of the tracks and reached another one when his wagon was hit by a moving passenger car and overturned, and he received the injury complained of. The company defended under the act of 1868, and upon the alleged contributory negligence of Colvin. Our first inquiry is whether the act of 1868 is applicable to this case.

This, in view of the uncontroverted facts, was for the court to determine. Colvin was not an employee of the railroad company. He was not a mere traveler upon the highway passing over these tracks to reach his destination beyond the yard of the company. He was not a passenger making his way to or from the cars of the defendant by the route provided for that purpose. He was there as the employee of a shipper of freight for the purpose of delivering his employer's goods at the car into which they were to be loaded for transportation by the defendant. His position is exactly described by the statute. He was " lawfully engaged or employed on or about the roads, works, depots and premises of a railroad company," and about a " car therein or thereon." His employment about the premises and the cars of the defendant, in connection with the delivery and shipment of his employer's goods, is as clear as though he had been an employee of the railroad company engaged in loading freight into its cars. It is of the same nature, involves the same risks, and requires the same care on his part. The act of April 4, 1868, puts all persons so employed upon the same ground so far as their right to recover for an injury is concerned, whether they are the employees of the railroad company or of its patrons. The work of handling freight about the yard and cars of a railroad exposes the workman to dangers against which he must guard ; and since the act of 1868 the question is not for whom he is employed, but what is the nature of his employment. If engaged in the hazardous work of delivering freight, or loading or unloading cars, or moving them from place to place for that purpose, it is no longer material for whom the labor is being performed. A railroad company does not owe to its employees or other persons employed about its cars and yard the same degree of care that is due to the public at street crossings, or places of exposure. It cannot be required to keep a watchman at every point in its own yards where an employee or a handler of freight may have occasion to cross its tracks or sidings ; and if

the plaintiff below had been the teamster of the railroad company engaged in hauling the same load to the same car, and been injured in the same manner, it would not be contended that he could recover. The act of 1868 places him in the same situation as though he had been in the employment of the defendant. He knew, or was bound to know, the uses to which the tracks were necessarily put in the business of the company. He knew that the making up of trains and the shifting of cars for purposes of loading and unloading were constantly going on in the defendant's yard. He knew that the numerous tracks to be crossed were built and used for such purposes, and it was his duty to exercise care proportionate to the dangerous character of his employment. This he made no effort to do. Under all the evidence in this case we think the act of 1868 was an answer to the plaintiff's action.

It was also error to admit the evidence offered to show that the flagman had the reputation of being a careless and incompetent person for the place. He may have had a very bad reputation and yet have discharged his duty faithfully on this occasion. The question was, what did he do ? how did he discharge his duty at this time ? What he had done or left undone on former occasions was wholly immaterial and irrelevant, and the only effect of the admission of the evidence objected to was, to excite the prejudices of the jury against the flagman and his employer, and so indirectly and improperly impeach his credit and injure the defendant.

The second point submitted by the defendant below should have been affirmed without qualification. The proposition that the contributory negligence of the plaintiff is an answer to his action to recover damages for an injury, is too well settled to require the citation of authorities. If then, as the defendant below alleged, and as the overwhelming balance of the testimony shows, the flagman signaled Colvin as he was leaving Water street to stop, and in disregard of the signals he continued to urge his team forward upon the tracks of the company and was injured, he was guilty of contributory negligence and could not recover. But under the view we have taken of the act of 1868, the discussion of the other questions involved becomes unimportant.

Judgment reversed.