JOHANNAH GAGNON, administratrix, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

SAME *vs.* SAME.

Suffolk.    January 20, 1910. — May 17, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Negligence,* Street railway, Gross, Causing death.    *Evidence,* Violation of rule as evidence of negligence, Presumptions and burden of proof.

A corporation, which operates a street railway in the subway in Boston, where the platforms in the stations are well lighted, and which has instructed the conductors of cars entering and leaving the stations to stand upon the lower right hand step of the rear platform of the cars, facing outward with one hand grasping the hand rail on the body of the car and the other the rail on the dasher " to keep any person from boarding the car while it is in motion," need not take the additional precaution of requiring, as to trains composed of two closed surface cars coupled together, that the doors into the rear vestibule of the first car shall be closed until the trains come to a standstill, and a failure to make this requirement is not evidence of negligence on the part of the corporation.

In actions against a corporation operating a street railway in the subway in Boston to recover for the conscious suffering and death of the plaintiff's intestate, who, while attempting to get aboard the first car of a train of two closed surface cars as they were passing slowly to a berth in a station in the subway, lost his hold and fell beneath the rear car and was run over and killed, it appeared that rules of the defendant required its conductors to stand upon the lower right hand step of the rear platform of cars entering the station, facing outward with one hand grasping the hand rail on the body of the car and the other the rail on the dasher " to keep any person from boarding the car while it is in motion," that the conductor on the car which the plaintiff's intestate attempted to board was not on such step but was on the platform of the car, that

there was no crowd upon the platform, which was well lighted, and that the plaintiff's intestate was acting under no exigency, infirmity or limitation. *Held,* that under the circumstances the act of the conductor in not observing the rules of the defendant did not constitute negligence toward the plaintiff's intestate.

In actions against a corporation operating a street railway in the subway in Boston to recover for the conscious suffering and death of the plaintiff's intestate, who, while attempting to get aboard the first car of a train of two closed surface cars as they were passing slowly to a berth in a station in the subway, lost his hold and fell beneath the rear car and was run over and killed, it appeared that the conductor of the rear car, who in the course of his duties was standing on the step of the rear platform thereof, saw the plaintiff's intestate as he was falling, called out loudly to the conductor of the forward car, who was disobeying a rule of the corporation and was upon the rear platform and not upon the step of the car which the plaintiff's intestate was attempting to board, and then, either without giving any signal from the platform where he was or without giving an emergency signal which would have caused the car to be stopped instantly, ran forward to assist the plaintiff's intestate. *Held,* that there was no evidence of negligence on the part of the conductor of the second car toward the plaintiff's intestate.

Two ACTIONS OF TORT by the administratrix of the estate of Zephron Gagnon, the first to recover for the conscious suffering, and the second for the death of the plaintiff's intestate due to his having fallen beneath and been run over by the second car in a two car surface train of the defendant in the Park Street station of the subway in Boston on October 28, 1905. Writs dated July 20, 1906.

The cases were tried together before *Brown,* J. After the plaintiff's counsel had made an offer of proof in writing, setting forth evidence, the substance of which is stated in the opinion, the presiding judge ordered verdicts for the defendant; and the plaintiff alleged exceptions.

The cases were argued at the bar in January, 1910, before *Knowlton,* C. J., *Hammond, Braley, Sheldon,* & *Rugg,* JJ., and afterwards were submitted on briefs to all the justices.

*E. V. Grabill,* for the plaintiff.

*W. G. Thompson,* (*S. H. E. Freund* with him,) for the defendant.

RUGG, J. A two car train of the defendant, whose crew consisted of three, the motorman in the forward end of the first or motor car, Corbett, the conductor of the same car standing on its rear platform, and Foster, the conductor of the second car or trailer standing on the step of its rear platform, moved slowly along the platform of the subway station at Park Street and

was about a car length from the place where it was to stop, when the plaintiff's intestate attempted to get upon the rear platform of the motor car, but his hand slipped from the grab iron and he fell under the train, and received mortal injuries. There was in force a rule of the defendant, which required conductors at this station to " take position on right hand rear step of car platform, with left hand grasping the body rail and right-hand the dasher hand rail, facing outward toward the station platform and ride thus until the car arrives at its assigned berth. . . . The object of this is to keep any person from boarding the car while it is in motion." Another general rule required conductors to take a similar position under circumstances here disclosed "so as to guard the platform, and to prevent any person getting on or off while the car is in motion. This rule must be complied with in a manner to avoid controversy and insure the safety of passengers." Corbett, the conductor of the motor car, was violating these rules at the time of the accident by standing upon the platform of his car and not on its step.

The plaintiff can prevail only by showing at the least negligence of the defendant or of its servants. It has not been argued that there was any unfitness of its servants. It is urged, however, that negligence of the defendant may be inferred from its failure to require that the entrance doors be closed until the car came to a standstill. This was not an elevated train, but one composed of two trolley cars of the ordinary type. They were proceeding slowly along a well lighted platform at which they were to stop to receive passengers. There was no obscure or hidden danger connected with attempting to board such a car under these conditions. Everything was plainly in view, and the material circumstances were as well known to the ordinary passenger as to the defendant. The duty rested upon the defendant of providing for the public the quickest possible entrance to its cars consistent with safety. It would be unjust to hold the defendant negligent for permitting, by the mechanical construction and operation of its cars, the plaintiff's intestate to do that which she must show was due care on his part in order to recover in the action for conscious suffering. Hence there was no negligence on the part of the defendant.

It is argued that there was evidence from which the negli-

gence of Corbett, the conductor of the motor car, may have been found from the fact that he was violating the rule of the defendant which required him to be standing upon the lower step of his car, grasping each hand iron, so as to stop people from getting upon the car while it was in motion.   *Stevens* v. *Boston Elevated Railway*, 184 Mass. 476, *Burns* v. *Worcester Consolidated Street Railway*, 193 Mass. 63, 66, *Partelow* v. *Newton & Boston Street Railway*, 196 Mass. 24, 30, *Chadbourne* v. *Springfield Street Railway*, 199 Mass. 574, and *Crowley* v. *Boston Elevated Railway*, 204 Mass. 241, are claimed to be authorities in support of this contention.   But the principle established by these cases has never gone to the extent of holding that the violation of a rule, enacted by a common carrier for the purpose of preventing members of the public from taking a wholly obvious risk is, by itself and apart from any other act of carelessness, evidence of negligence upon which the plaintiff can rely as a direct cause of injury.   Apparently the primary object of the rule was to require its employees to protect the defendant from claims for personal injuries sustained by those who, relying upon cases like *Corlin* v. *West End Street Railway*, 154 Mass. 197, *Marshall* v. *Boston Elevated Railway*, 203 Mass. 40, 42, and *Payne* v. *Springfield Street Railway*, 203 Mass. 425, 432, try to get on a moving trolley car.   In connection with other circumstances showing want of ordinary prudence, and sometimes without such support, violation of a rule would be entitled to consideration.   But in the case at bar every element of danger was manifest and as plain to the plaintiff's intestate as it could be to any servant of the defendant.   There was nothing concealed, dim or uncertain.   There was no crowd upon the platform.   The deceased was acting under no exigency, infirmity or limitation.   If there had been no rule, it is plain that it could not be even plausibly contended that there was evidence of negligence on the part of Corbett.   The argument of the plaintiff is that it was the exercise of due care on the part of her intestate to endeavor to board a moving car, and that it was negligence on the part of the conductor not to restrain him from such an attempt.   She predicates negligence of the defendant's servant on his failure to thwart her intestate in his effort to use due care.   The bald statement of such a propo-

sition is its refutation.   Under the conditions here disclosed, the act of the defendant's conductor in not observing such a rule, when there is nothing else to show want of proper caution on his part, cannot be treated as negligence toward the plaintiff's intestate.

Nor is there sufficient evidence of negligence on the part of the conductor Foster, who was on the step at the rear of the trailer.*   It is urged that he should have acted with more agility after discovering the peril of the plaintiff's intestate, and also that he should first have gone to his platform and signalled for an instant stop.   He shouted to the conductor of the motor car, and rushing forward strove unsuccessfully to rescue the plaintiff's intestate.   He did what might have appeared to any reasonable man the most practical and humane thing to do.   It is pure speculation whether any other course would have produced better results.

As there is no evidence of negligence upon which the action for conscious suffering may be supported, it follows that there was no gross negligence of any servant or agent of the defendant, and the action under R. L. c. 111, § 267, fails.

*Exceptions overruled.*

---

* The offer of proof as regarded the conduct of Foster was as follows: "Foster, . . . standing on the rear step [of the rear car] saw what was happening.   He called out loudly to Corbett, the conductor of the forward car, and says that he himself also instantly jumped upon the rear platform of the trailer car and pulled his buzzer strap three times, which, if he did, would have given the emergency signal, so called, that is, the signal to both the conductor and the motorman of the motor car for stopping the train instantly wherever it was.   But the plaintiff offers and expects to prove that Foster either did not pull the buzzard strap at all, or else did not pull the emergency signal of three buzzers.   He did, however, run forward in an attempt to keep Mr. Gagnon from being run over, but did not succeed in this attempt.   Corbett, having his attention attracted by Foster's yell, pulled in three bells.   The motorman, McNeilly, heard only three bells and no buzzer, and immediately stopped the car upon hearing those three bells, but not until the last of the rear wheels of the trailer car had passed almost entirely over the body of Mr. Gagnon."