SOLON H. BORGLUM, ADMINISTRATOR, *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, Bridgeport, October Term, 1915.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

One who approaches a known railroad crossing at grade is bound to act prudently, since such crossings are dangerous places.

The owner and driver of an automobile who sees a flagman standing upon such a crossing with his back to the approaching automobile and waving a flag, is reasonably notified, in view of the known dangers of the place, that the flagman is either warning travelers against crossing the tracks, or—what comes to the same thing from the standpoint of the automobilist—is signaling an oncoming train to pass the crossing; and if he persists in attempting to proceed and is killed by the train, he is guilty of contributory negligence which precludes his administrator from recovering damages of the railroad company.

A railroad company which maintains a flagman at a grade-crossing who gives warning of the approach of trains to the traveling public upon the highway, pursuant to an order of the Public Utilities Commission, has fulfilled its legal duty of exercising due care with respect to that matter. It is not essential that the flagman, while signaling, should stand exactly in the middle of the road, nor that he should face the direction from which the traffic was most likely to come; for his mere presence on the highway crossing waving a flag is in itself a warning to highway travelers.

The theory of intervening negligence has no place where the active negligence of the plaintiff, or of his intestate, contributes, up to the last moment, toward the final catastrophe.

The plaintiff's evidence in the present case briefly reviewed and *held* not to afford any foundation for a claim of negligence upon the part of the defendant's flagman.

Argued October 29th—decided December 17th, 1915.

ACTION to recover damages for causing the death of the plaintiff's intestate by negligence, brought to the Superior Court in Fairfield County where the plaintiff was nonsuited in a trial to the jury before *Williams, J.*, and from the court's refusal to set aside such judgment the plaintiff appealed. *No error.*

The plaintiff also brought another action for destroying the automobile of his intestate, which was tried with the present one and was disposed of in like manner. *No error.*

*Edward M. Lockwood* and *John D. Fearhake*, with whom was *Edward D. Freeman* of New York City, for the appellant (plaintiff).

*William L. Barnett*, for the appellee (defendant).

BEACH, J.   The facts which the plaintiff's evidence tended to prove are very simple: On September 8th, 1913, the plaintiff's decedent, Addison T. Millar, was driving his automobile along Main Street in the city of Norwalk.   His wife, daughter and a guest were with him in the car.   At the corner of Main Street and the New Canaan Road he turned to the west down a gentle incline, intending to pass over the single track of the New Canaan Branch of the defendant railroad, which crossed the New Canaan Road at grade about one hundred and fifty feet from Main Street.   On the other side of the crossing Tindale Avenue diverged from

the New Canaan Road; both highways being well traveled and fairly straight for a considerable distance beyond the crossing. The crossing was blind and dangerous, and the Public Utilities Commission had, in March, 1913, ordered the defendant railroad to station a flagman there "to give warning to the traveling public on said highways of the approach of all engines, cars and trains." As the plaintiff's intestate turned the corner and drove down the hill toward the crossing he threw out the clutch of his car, put on the brake and slowed down to something less than ten miles an hour. The approaching train, running at the rate of forty miles an hour, was hidden from sight by a bank on the northerly side of the highway. The engineer and fireman of the train testified that the whistle was blown for the crossing and that the bell was ringing. An eyewitness of the accident testified that he heard the whistle, and that at the time Mr. Millar turned his car from Main Street toward the track the defendant's flagman was standing in the traveled part of the highway on the easterly or Main Street side of the crossing, facing west, and waving a white flag back and forth across the highway. This he continued to do until the automobile coming from behind him was about thirty feet from the track, when the flagman turned, held up his hand and took one or more steps toward the automobile shouting loudly to the occupants to stop. The automobile did not blow any horn and did not appear to the witness to change its speed, but went on and was struck by the train. The daughter of the plaintiff's decedent testified that she saw the flagman waving his flag, but did not hear the train or hear the flagman's warning shout; that they approached the crossing slowly, and at the last moment put on speed to escape. The plaintiff's decedent had frequently driven over this crossing, but it did not appear that he had ever ob-

served a flagman there. The flagman was not called as a witness by the plaintiff, and the facts above outlined were not contradicted.

Upon this state of the testimony the trial court was justified in directing a nonsuit, and in refusing to set it aside.

It is claimed that the jury might have found that the plaintiff's decedent was in the exercise of due care, on the theory that he had a right to interpret the flagman's presence in the highway, waving a white flag across the line of travel, as an assurance of safety and an invitation to cross the track. We think the jury could not reasonably have come to that conclusion. It is a matter of common knowledge that flagmen appointed to guard railway crossings do not stand in the traveled path waving flags, except when a train is approaching the crossing. There was nothing in the conduct of this flagman, who stood with his back to the approaching automobile waving his flag across its line of travel, which could reasonably suggest to the plaintiff's decedent that he was inviting him to cross in front of the approaching train. One who approaches a railroad crossing knowing it to be such, and sees a flagman, evidently unconscious of his approach, standing in the traveled path waving a flag, is reasonably notified, in view of the known dangers of the place, that he is either warning travelers against crossing the tracks, or—what comes to the same thing from the traveler's standpoint—is signalling an approaching train to pass the crossing. "A railroad crossing is . . . a dangerous place, and the man who knowing it to be a railroad crossing approaches it, is careless unless he approaches it as if it were dangerous." *Peck* v. *New York, N. H. & H. R. Co.*, 50 Conn. 379, 394. Independently of any other question, we think the plaintiff's own evidence showed that his decedent was not in the exercise of due

care at the time of the accident. *Cottle* v. *New York, N. H. & H. R. Co.*, 82 Conn. 142, 72 Atl. 727; *Elliott* v. *New York, N. H. & H. R. Co.*, 84 Conn. 444, 446, 80 Atl. 283.

Upon the issue of the defendant's negligence, the plaintiff's case is equally deficient. The Public Utilities Commission had ordered the defendant to maintain a flagman at this crossing to give warning to the traveling public of the approach of trains. By that order the Commission took away from the defendant any discretion as to what should be done at this particular crossing to give warning to the traveling public; and if the defendant has obeyed that order and its servants have carried out the order, it has fulfilled its legal duty of exercising due care in the premises so far as giving warning at the crossing is concerned. This seems to be conceded; but the plaintiff claims that the flagman was negligent in the manner of carrying out the order of the Public Utilities Commission, in that he stood to one side of the middle of the traveled highway, and in that he remained standing with his back toward Main Street and did not see the automobile in time to stop it.

Neither of these claims appears to us to be well founded. The photographic exhibits show that the flagman stood conspicuously in the traveled part of the highway, and that being so the fact that he was not quite in the middle of it does not seem to be material. The other claim of negligence on the part of the flagman is that he remained with his back toward Main Street, the direction from which it is assumed that approaching traffic was most likely to come; and was negligent in not turning around and observing the approaching automobile until it was within thirty feet of the track. We do not think the jury could reasonably have found that the defendant's flagman was negligent in this regard, because he had a right to sup-

pose that any traveler approaching from behind him would be warned by the mere fact of his presence in the highway waving a flag. Moreover, the order of the Public Utilities Commission did not require the railroad company to warn the traveling public otherwise than by maintaining a "flagman"; that means, we take it, a man whose duty it is to warn the traveling public by waving a flag. If he does warn the public in that way, it is, for the purposes of the order, sufficiently warned, and the jury could not charge the flagman with the additional duty of being vigilant in observing the approach of vehicles to see that they did not disregard the flag warning.

It is also said that the flagman was not obeying the order of the Public Utilities Commission because it is said that he was flagging the approaching train instead of warning the traveling public; but we think it is sufficiently obvious that the act of flagging an approaching train at a grade-crossing, if conspicuously done, is in itself a warning to the traveling public.

Complaint is made of a ruling of the court excluding, as irrelevant, evidence that stationary signals at adjacent crossings showed red when a train was approaching; this evidence being claimed on the ground that it tended to prove negligence on defendant's part in permitting the flagman to show a white flag at this crossing when a train was approaching. This evidence was properly excluded because, as already stated, the mere presence of the flagman in the traveled part of the highway conspicuously waving a flag was, under the order of the Public Utilities Commission, a sufficient warning to the traveling public.

The plaintiff also claims that notwithstanding any supposed negligence on the part of the decedent, the effective proximate cause of the injury was the flagman's intervening negligence in not attempting to

stop the decedent's automobile after the flagman knew, or ought to have known, that the decedent was unconscious of the danger of crossing the track. Since the continuing active negligence of the plaintiff's decedent contributed, up to the last moment, toward the final catastrophe, the theory of an intervening cause distinct from that negligence is wholly inapplicable to this case. *Nehring* v. *Connecticut Co.*, 86 Conn. 109, 120, 84 Atl. 301, 524; *Hygienic Ice Co.* v. *Connecticut Co.*, *ante*, p. 21, 96 Atl. 152. Moreover, it does not appear that the jury could reasonably have found that the flagman remained inactive after he knew, or ought to have known, that the decedent was intending to proceed in crossing the track. On the testimony in this case there was no time when the flagman was not attempting to stop the decedent's automobile. He continued to warn the decedent by waving his flag until the automobile came within thirty feet of the crossing, and then by shouting to him to stop, and there is no foundation for the claim that the accident was due to any negligence on his part.

There is no error.

In this opinion the other judges concurred.