GULF, C. & S. F. RY. CO. v. GADDIS et al. (No. 39–2692.)

(Commission of Appeals of Texas, Section B. Feb. 19, 1919.)

1. RAILROADS ⟨⇒⟩324(1) — CROSSING — NEGLIGENCE.

One crossing a railroad track must exercise some degree of care for his own safety, being charged with knowledge that a railroad track is a dangerous place, even at a public highway.

2. RAILROADS ⟨⇒⟩331(4) — CROSSING ACCIDENTS—NEGLIGENCE.

Where deceased, though warned by flagman maintained at a highway crossing, attempted to cross in front of a train running at a speed in excess of that fixed by ordinance, he was guilty of contributory negligence, and no recovery could be had on the theory that he could assume the railroad was not violating the ordinance, and, if not, he could pass ahead in safety.

3. APPEAL AND ERROR ⟨⇒⟩995 — REVIEW — FINDINGS.

Reasonableness of a conclusion from undisputed facts is to be tested by the inherent soundness or reasonableness of the conclusion itself, and an appellate court must decide the question for itself.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by Nancy Gaddis and others against the Gulf, Colorado & Santa Fé Railway Company. A judgment for plaintiffs was affirmed by the Court of Civil Appeals (166 S. W. 124), and defendant brings error. Reversed and rendered.

Terry, Cavin & Mills, of Galveston, and Lee & Lomax, of Ft. Worth, for plaintiff in error.

Slay & Simon, of Ft. Worth, for defendants in error.

McCLENDON, J. This case is brought to the Supreme Court upon writ of error by defendant to review a judgment of the Court of Civil Appeals, Second District (166 S. W. 124), affirming a judgment of the district court of Tarrant county in favor of plaintiffs in an action to recover for the death of Jack Gaddis, who was killed about 9:30 o'clock p. m., December 28, 1911, at Elizabeth street crossing in the city of Ft. Worth by one of defendant's passenger trains.

The sole question presented for our decision is whether Gaddis was guilty of contributory negligence as a matter of law.

The evidence is practically undisputed, the defendant having offered no testimony. The facts material to the issue here presented are simple and substantially as follows: Elizabeth street, which extends north and south, was intersected by the main line of defendant, as well as by several tracks of other companies. It was frequently traveled both by vehicles of every character and by pedestrians. The defendant maintained a watchman for the protection of travelers upon the street. Gaddis, who was 44 years of age, had lived some years in Ft. Worth; and, when traveling from his home to the business part of the city on foot, by the most direct route, he had to pass over the Elizabeth street crossing. The defendant's track north of the crossing is straight and unobstructed for a distance of about 900 feet. Upon the night in question, the passenger train that killed Gaddis was traveling south upon defendant's main line track at the rate of about 20 miles per hour, in violation of a city ordinance limiting the speed of trains to 6 miles per hour. When the train was at a distance of about 500 feet and again at about 300 feet of the crossing, the whistle was sounded and the bell was continuously rung. The electric headlight on the engine was burning and threw a flood of light down the track. Gaddis was walking east on the south side of Elizabeth Street at an ordinary gait. The flagman was in the center of the street, waiving a red lantern, and, when Gaddis was about 15 feet from the track, the flagman called to him to look out. The flagman was then in the center of the street some 20 to 24 feet north of Gaddis. Gaddis turned his head in the direction of the flagman, quickened his pace in the direction he was going, and just as he reached the track was struck by the train and killed. About the time the engine entered Elizabeth street, the whistle of the engine gave several short, sharp blasts, the brakes were applied, and the train came

to a stop, but not until the engine had passed the crossing several car lengths. At the time Gaddis turned his head toward the flagman, the engine was some 60 or 70 feet north of where he was struck.

[1, 2] The theory of plaintiffs is that when Gaddis was warned by the flagman, and turned his head in that direction, he saw the train, and, assuming that it was going at not exceeding 6 miles an hour as required by the ordinance, he calculated that he could with safety cross the track in front of it; and that, under this theory, it was a question of fact for the jury to determine whether a man of ordinary prudence would have then attempted to cross in front of the train. The issue by the uncontroverted facts is thus narrowed down to the question whether as a matter of law one traveling upon a highway is warranted in using his own judgment in attempting to pass in front of a moving train in a case where the railway company has provided a flagman for the protection of passers and the flagman warns him not to pass. The cases cited by plaintiffs in which it is held that one using a public highway has a right to assume that a railway company, making use thereof, will not violate the law, are all lacking in the element, here present, that the railway company had provided a flagman for the very purpose of warning and protecting the public. The test to be applied of ordinary care on the part of those using the highway is usually one of fact for the jury, and this is true, not only when the facts and surrounding circumstances are in dispute, but even where the facts may be undisputed if the inferences from those facts admit of different reasonable conclusions. This is so because the question of negligence is, after all, one of conclusion from facts and circumstances, and it is not always proper to say that but one conclusion can reasonably be drawn from the same undisputed facts. It is well settled in this state that one who crosses a railroad track must, as a matter of law, exercise some degree of care for his own safety.

All men in possession of their faculties are charged with knowledge that a railroad track is a dangerous place, and the law will not permit them to go upon the track, even at a public highway, without being charged with a recognition of the danger attending such action and the use of such care as ordinary prudence would dictate in so doing. Where no care whatever has been exercised, our courts uniformly hold that contributory negligence exists as a matter of law, and recovery is denied. What acts of prudence as constituting ordinary care are required is usually a question of fact. Had Gaddis, upon approaching the crossing, seen the train at an approximate distance of 60 or 70 feet, when he himself was some 15 feet from the track, and in good faith believed, judging from the distance and speed of the train, that he had ample time to cross in safety, it may be, under the circumstances, that a jury would be warranted in finding that he was not guilty of negligence. He was a resident of Ft. Worth, and no doubt knew of the ordinance, and had the right to assume that the train was not running in excess of the speed limit, unless, from his observation and all the surrounding circumstances, such assumption was not warranted. This seems to be the holding in the case of Railway v. Wagley, 15 Tex. Civ. App. 308, 40 S. W. 538, cited by plaintiffs. We do not believe, however, it is reasonable to acquit Gaddis of negligence, where the additional fact exists that the flagman placed by defendant for the purpose of preventing injury warned him against the venture. We have not found any case by our Supreme Court deciding this question; but the decisions of other jurisdictions, in so far as they have come to our knowledge, are all to the effect that, under such circumstances, no recovery can be had. Borglum v. Ry., 90 Conn. 52, 96 Atl. 175; Ry. v. Nichols, 74 Ill. App. 197; Ry. v. Batson, 81 Ill. App. 142; Ry. v. Williams, 87 Ill. App. 511; Ry. v. Sink's Adm'r, 118 Va. 439, 87 S. E. 740; Emery v. Ry., 173 Mass. 136, 53 N. E. 278; Hanson v. Ry., 62 N. J. Law, 391, 41 Atl. 868; Oberdorfer v. Ry., 149 Pa. 6, 27 Atl. 304; Ry. v. Colvin, 118 Pa. 230, 12 Atl. 337; Cleary v. Ry., 140 Pa. 19, 21 Atl. 242; State, to use of Dyrenfurth, v. Ry., 73 Md. 374, 21 Atl. 62, 11 L. R. A. 442.

We are constrained to hold that Gaddis was guilty of negligence as a matter of law. To do otherwise, we believe, would be the enunciation of a rule contrary both to sound policy and common experience. The right of the public to use a highway is not altogether without its restrictions and limitations. The railroad company, likewise, has its rights. Necessity requires the crossing of highways by the tracks of railways and the running of trains thereon. Danger to the public is a necessary consequence, and members of the public are required to take this into consideration in using the highway and to be governed accordingly. When a railroad company has provided at a crossing a flagman charged with the duty of knowing of the approach of trains and of the times when danger to the public in crossing the track exists, we think it unreasonable not to require users of the crossing to subordinate their own judgment to that of the flagman; and when they do not do so, and injury results, it should be at their own risk.

[3] We are met with the suggestion that a contrary opinion has been reached by twelve jurors, a trial judge, and three judges of the Court of Civil Appeals, from which it is urged that such conclusion must be reasonable. We are not unmindful of the force of this suggestion. However, the reasonableness of

a conclusion to be drawn from undisputed facts is not to be tested by the reasonableness of the individuals who arrive at it, but by the inherent soundness or reasonableness of the conclusion itself; and, when such question is presented to an appellate court for decision, such court must decide the question for itself, untrammeled by what other minds may have concluded, and with the consciousness that its own conclusion may not in every instance meet the full approval of others equally capable but not charged with the ultimate duty of decision. A different conclusion by other minds is, of course, persuasive. Which fact makes valuable the opinions of other jurisdictions not binding, as a matter of law, upon this jurisdiction. But in the last analysis each court is charged with the duty and must for itself determine the question of reasonableness of a particular conclusion from a given undisputed state of facts; and, with all deference to those with whom we here differ, we have been unable to reach any other reasonable conclusion but · that contributory negligence as a matter of law is shown in this case.

We therefore conclude that the judgments of the district court and Court of Civil Appeals should be reversed, and judgment rendered for plaintiff in error; all costs to be assessed against defendants in error.

PHILLIPS, C. J. The judgment as recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.