HARRY ROHTHSTEIN, administrator, vs. BOSTON AND MAINE
RAILROAD.

Essex. April 7, 8, 1936. — May 26, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Negligence*, Railroad, Grade crossing, Contributory.

The swinging of a white lantern by the crossing tender at a grade crossing
of a railroad with a public way as a train was approaching in plain
view of travellers on the way at a time when red warning signals were
flashing and had been flashing intermittently because of the shifting
of freight cars near the crossing, did not show an invitation to travel-
lers to cross the tracks in the absence of evidence that a white lantern
was ever used by the railroad employees for that purpose, and did not
warrant a finding that the crossing tender was negligent; and a travel-
ler, who attempted to cross the tracks in such circumstances and was
struck and killed by the train, as a matter of law was guilty of con-
tributory negligence.

TORT. Writ in the Superior Court dated October 25,
1930.

The action was tried before *Sheehan*, J. There was a
verdict for the plaintiff in the sum of $2,593. The defend-
ant alleged exceptions.

*J. DeCourcy*, for the defendant.

*J. B. Goding*, (*A. Hurwitz* with him,) for the plaintiff.

CROSBY, J. This is an action of tort brought by the
plaintiff, as administrator of the estate of George Rohth-
stein, to recover damages for the death of his intestate,
who was instantly killed on September 18, 1930, at a grade
crossing in Newbury, in this Commonwealth, when an auto-
mobile truck driven by the intestate and a passenger train
of the defendant were in collision.

The plaintiff's amended declaration contains two counts.
Count 1 is brought under G. L. c. 160, §§ 138, 232, and
alleges in substance that the defendant by its servants
neglected to ring a bell or sound a steam whistle upon the
engine of the train involved in the accident for a distance

of· at least eighty rods before the train reached the cross-
ing, and that, owing to this neglect of the defendant,
the train struck the truck which the plaintiff's intestate
was driving, and he was so severely injured as to cause his
death.   Count 2 is brought under G. L. c. 229, § 3, and is
based on negligence; it alleges, in substance, that the plain-
tiff's intestate was in the exercise of due care, and that·
owing to the carelessness of the defendant, its servants and
agents in charge of the operation of a railroad train, and
the carelessness and negligence of the defendant, its agents
and servants in charge of the grade crossing, the train
struck the truck which the plaintiff's intestate was driv-
ing, and he was so severely injured as to cause his death.
The defendant's answer contains a general denial, and pleads
the defences of contributory negligence, gross negligence,
and violation of law on the part of the plaintiff's intestate.

At the close of the evidence the defendant filed a motion
for a directed verdict on both counts of the amended decla-
ration.   The motion was denied and the defendant excepted.
The jury returned a verdict for the defendant on the first
count, and found for the plaintiff on the second count in
the sum of $2,593.

The grade crossing where the accident occurred is known
as the "State Street Crossing" and is situated on the New-
buryport Turnpike (also called at this point State Street)
in the town of Newbury, a short distance south of Newbury-
port.   Here three tracks of the defendant railroad cross the
highway at grade, two of which are main line tracks of the
defendant's Portland division, and the third is a side track.
These tracks run approximately north toward Portland and
south toward Boston.   The highway runs approximately
northeast toward Newburyport and southwest toward Bos-
ton.   It was admitted by the plaintiff's opening to the jury
that as the plaintiff's intestate approached the crossing
there were two automatic red flashlights in operation.
There was evidence that the distance from the center of
the lens of each of the red flasher lights to the ground was
seven feet six inches; that "there were two lights to be
seen by an automobile travelling toward Boston, and two

lights on the same pole to be seen by an automobile travelling from Boston toward Newburyport; that is, there were four lights, two on one side of the pole, and two on the other."

There was evidence that on the night of the accident the plaintiff's intestate approached the crossing from the direction of Newburyport, and that the train involved in the accident approached the crossing from the direction of Boston. There was evidence that the plaintiff's intestate at the time of the accident was eighteen years and six months old, and had been employed as a truck driver about two and a half years prior to that time. One Battles, a witness called by the plaintiff, testified that on the night of the accident he saw a truck carrying a large load of chickens, and as it passed him it was travelling from twenty to twenty-five miles an hour; that from the place where he was standing the three railroad tracks would be within his line of vision; that trains were shifting that night on the northerly side of the road, and that was going on as the truck came along; that after the truck passed out of his sight the next thing "that attracted his attention was that he heard a crash. He was looking in that direction anyhow, noticing the direction of the truck, and he saw the red flasher lights flashing, heard the crash, and, of course, saw the flame afterwards . . . . From the point where he was standing, and at the time he saw those flashlights, he did not hear the sound of any whistle or the ringing of any gong. Following the crash he ran out into the road and looked down to the track."

One Cadigan, a witness called by the plaintiff, testified on direct examination that, accompanied by a Mrs. Jones, he was driving his automobile on State Street on the night of the accident; that a truck passed him carrying a load of chickens in crates and travelling "about twenty-two, twenty-five miles an hour"; that it kept going in the same direction along State Street toward the crossing, and after it passed him it was not over fifty yards ahead of him at any time prior to the accident; that it passed him when he was going about eighteen to twenty miles an hour, and

they were both headed in the same direction going down toward the crossing; that he had his eye on the truck which was ahead of him; that the space between them got shorter, and the next thing he knew was a streak of flames; that he saw some movement of trains to his right as he came along before the accident; that he did not hear the sound of any whistle from a locomotive or the ringing of a bell; that after he heard a crash he stopped on the side of the road and ran down the tracks to the place of the accident. This witness testified on cross-examination, in part, as follows: he could see the red flashlights going the entire time up to the minute of the accident, and he was quite a way back from the crossing when he first noticed the flashing of the red lights; he was a thousand feet or more back from the crossing when he first noticed them, "and they were flashing continuously up to the moment of the crash . . . . As he was going along there he noticed a crossing tender standing out in the middle of the road, swinging a lantern, and the crossing tender continued to swing the lantern until almost the moment of the crash. He did not remember seeing a crossing tender because the truck was in front of him. It was afterwards that he saw one when he stopped his car and went over there. He did see a crossing tender there at some time swinging a lantern."

One Aldorisio, a witness called by the plaintiff, testified on his direct examination, in substance, as follows: On the night of the accident he was driving a truck for his employer. One DeStefano was riding with him, and they left Somerville at about eight o'clock that night and were bound for Portland. When they arrived at the State Street crossing he stopped "for the flashers which were in operation." There was a gateman at the time in the center of the road, close to the witness's side of the crossing and about ten or fifteen feet from the front of his truck. "The gateman was swinging a lantern, swinging it this way (indicating) towards the witness. The lantern was a white lantern. The witness did not observe more than one man upon the highway at that time." He "saw this truck coming down toward him just before the crash took place," and saw it "slow

down just before the crossing. In the witness's opinion it slowed down to practically a dead stop, and then came along, came ahead. The next thing he saw happen was the crash. The train hit the truck at the cab." He "jumped off his truck and went over to the gateman who at that time was in the shack . . . . The gateman had the lantern in his hand at that time." The witness went up the tracks and saw one of the bodies between the tracks, the body of Rohthstein on the engine, and parts of the truck all over the railroad tracks.

Frank DeStefano, who was with Aldorisio on the truck of the latter, testified that he saw the truck which was struck by the engine approach the crossing; that he saw it slow down and just as it got to the crossing he thought it came to a dead stop; that when the truck on which he was riding came to a stop before going over the crossing, he observed that the flashlights were on; that he saw "a gateman in the middle of the road about fifteen feet from the witness toward the track"; that he was waving a white lantern (indicating the way in which the gateman was waving the lantern); that he did not hear any whistle or the sound of any gong before the train hit the truck. On cross-examination this witness testified that "As he came along the highway towards Newburyport that night and approached the crossing, he saw those red lights flashing continuously, and he and Aldorisio stopped because he knew a train was coming." The engineer and the fireman on the engine which collided with the truck testified that the bell was rung and the whistle was blown as required by G. L. c. 160, § 138.

After the close of the evidence the defendant presented a motion for a directed verdict in its favor on each count of the amended declaration. The motion was denied subject to the defendant's exception. The defendant then presented the following requests for rulings: "13. The burden of proof is upon the plaintiff under count 2 of the plaintiff's declaration to show that his intestate did not violate G. L. c. 90, § 15, which provides as follows: 'Every person operating a motor vehicle, approaching a railroad crossing

at grade, shall reduce the speed of the vehicle to a reasonable and proper rate, and shall proceed cautiously over the crossing.'" "18. There is no evidence that the crossing tender invited the plaintiff's intestate to cross the track in front of the rapidly approaching passenger train." "19. Even if the jury should find that the crossing tender used only a white lantern, this fact would not warrant the jury in finding that the crossing tender invited the plaintiff's intestate to cross the track in front of the rapidly approaching passenger train." The trial judge refused to rule and instruct the jury as requested by the defendant, and to this refusal the defendant excepted. The case was submitted to the jury on both counts of the plaintiff's amended declaration. The jury returned a verdict for the defendant on the first count, and returned a verdict for the plaintiff in the sum of $2,593 on the second count based upon negligence of the defendant.

The question is whether there was any evidence of negligence on the part of the defendant which caused the accident. There was no evidence that the speed of the train was excessive, and the judge so stated to the jury. There was no evidence that the defendant's engineer or fireman was negligent in any respect. It is stated in the plaintiff's brief that "The plaintiff relies chiefly, if not solely, on the misfeasance or malfeasance of the crossing tender to sustain the proposition that the evidence of the defendant's negligence was sufficient to warrant the submission of the case to the jury. There was ample evidence . . . to justify the jury in finding: a. Just prior to the collision the defendant's crossing tender was swinging a lantern; . . . b. It was a white lantern; . . . c. The crossing tender was swinging the lantern in such a way as to lead Rohthstein to believe and understand . . . that he could and should cross the State Street Crossing at that time with perfect safety; . . . d. Just before Rohthstein commenced to cross freight cars had been and were being shifted to his right, on the northerly side of the highway; . . . e. The headlight of the locomotive which was shifting the freight cars was burning; . . . f. The red flasher lights which had been

flashing intermittently were caused to so flash by the movement and presence of those freight cars; . . . g. The express train involved in the accident arrived at the point of the accident by mathematical calculation approximately seven and one half minutes ahead of its scheduled time."

The plaintiff states that "It would be a rational deduction for the jury to make that the tender invited Rohthstein to cross since he (the tender) must have known that the lights had been and were flashing as a result of the contact made by the shifting of the freight cars." It is the contention of the plaintiff that the defendant's requests numbered 18 and 19 were properly denied, and that the jury would be warranted in finding that the crossing tender by swinging his lantern invited the decedent to cross the tracks in front of this rapidly approaching train. To support this contention he relies upon the testimony of the witnesses Aldorisio and DeStefano, whose testimony in substance has been referred to, that the gateman was facing in the direction of Boston and was waving a white lantern. Their uncontradicted testimony shows that the gateman was standing in the middle of the road on the crossing with his back toward the intestate's truck, swinging a white lantern, and had been doing so for a short time before the accident. The train was in plain sight of the intestate for a considerable distance before he reached the crossing. The uncontradicted testimony shows that the red flashlights were being constantly operated for some time before the plaintiff's intestate or the train reached the crossing. The jury by their verdict found that the statutory signals were given by the defendant. The witnesses upon whom the plaintiff relies stopped and waited for the train to pass, and although the gateman continued to swing his lantern after they stopped it is evident that they did not understand his action to be an invitation to travellers on the highway to cross the tracks in front of the approaching train.

There was no evidence of negligence of the defendant's crossing tender in swinging the lantern or otherwise. The evidence would not warrant a finding that his act of swinging the lantern as he stood upon the crossing was an invitation

to the plaintiff's intestate to cross the tracks in front of the approaching train. The only reasonable inference from the entire testimony is that his act in swinging the lantern was to warn travellers upon the highway of the rapidly approaching train which was in plain sight at that time. His failure to swing a red light in the circumstances, with four red lights at the crossing continuously flashing, cannot properly be found to have contributed to the accident. *Gagnon* v. *Boston Elevated Railway*, 205 Mass. 483, 486. The evidence that he waved a white lantern instead of a red one is immaterial in the absence of any evidence that a white lantern was ever used by the defendant's employees to invite travellers to cross tracks, or that the plaintiff's intestate had any reason to treat it as an invitation to pass over the crossing. *Peck* v. *Grand Trunk Western Railway*, 155 Mich. 430. *Borglum* v. *New York, New Haven & Hartford Railroad*, 90 Conn. 52, 55.

A finding of negligence on the part of the defendant was not warranted. The evidence in its aspect most favorable to the plaintiff shows that his intestate was guilty of contributory negligence as matter of law. *Duggan* v. *Bay State Street Railway*, 230 Mass. 370. *Creeley* v. *Boston & Maine Railroad*, 263 Mass. 529. *Jones* v. *New York, New Haven & Hartford Railroad*, 275 Mass. 139, 144. *Anthony* v. *Boston & Maine Railroad*, 276 Mass. 392, 396. *Carcione* v. *Boston, Revere Beach & Lynn Railroad*, 278 Mass. 357. *Klegerman* v. *New York, New Haven & Hartford Railroad*, 290 Mass. 268. The exception to the refusal of the trial judge to grant the defendant's motion for a directed verdict on the second count of the amended declaration must be sustained. In view of the conclusion reached the other exceptions of the defendant need not be considered. Judgment is to be entered for the defendant.

*So ordered.*